STATE OF NORTH CAROLINA v. ROGER DALE CORNELIUS

No. 9026SC978

(Filed 3 December 1991)

1. **Searches and Seizures § 11 (NCI3d)— investigatory stop— reasonable suspicion—subsequent arrest—lawfulness of search**

   An officer had a reasonable, articulable suspicion of criminal activity to justify an investigatory stop of defendant's vehicle where the officer received a radio dispatch that a black male in a black BMW with a temporary license tag was selling controlled substances on a certain street in a neighborhood with a reputation as an area in which drugs were sold; the officer arrived at the street and saw a black BMW with a temporary tag driven by a black male pass by him; and the effective dates of the temporary tag were illegible. Furthermore, a search of defendant's vehicle following the investigatory stop was lawful as incident to a lawful arrest and based on probable cause and exigent circumstances where the officer arrested defendant for giving false information when defendant failed to produce identification and gave conflicting birth dates; the officer also arrested defendant for driving with a revoked license; a second officer smelled the odor of marijuana in the BMW; a passenger indicated that there were drugs in a bag in the backseat of the BMW; the second officer saw plastic baggies and small scales in the bag in the backseat of the BMW; and the BMW was then searched and cocaine and other items were seized by the officers.

   **Am Jur 2d, Searches and Seizures §§ 37, 41, 56, 96, 99, 102.**

   **Odor of narcotics as providing probable cause for warrantless search. 5 ALR4th 681.**

2. **Searches and Seizures § 12 (NCI3d)— investigatory stop— legitimate duration**

   An investigatory stop of defendant's vehicle did not exceed its legitimate scope where defendant's own behavior in refusing to give his correct name and birth date was responsible for the delay; only three to five minutes passed between the time of the stop and the initial arrest of defendant for giving false information; and a total of ten minutes lapsed between the time of the stop and a passenger's statement

that there were drugs in the vehicle; after which the vehicle was searched.

**Am Jur 2d, Searches and Seizures § 103.**

·**Validity, under federal Constitution, of warrantless search of motor vehicle — Supreme Court cases. 66 L. Ed. 2d 882.**

3. **Searches and Seizures § 47 (NCI3d)— lawfulness of investigatory stop—reputation of area for drug sales**

An officer's testimony that the area in which defendant was arrested had a reputation as a high crime area for sales of drugs was admissible to show the totality of the circumstances known by the officer at the time he made an investigatory stop of defendant's vehicle.

**Am Jur 2d, Searches and Seizures §§ 99, 103.**

**Validity, under federal Constitution, of warrantless search of motor vehicle — Supreme Court cases. 66 L. Ed. 2d 882.**

APPEAL by defendant from Order of *Judge Kenneth A. Griffin* entered 29 March 1989 in MECKLENBURG Superior Court. Heard in the Court of Appeals 22 August 1991.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Lucien Capon, III, and Valerie Spalding for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Gordon Widenhouse, for defendant appellant.*

COZORT, Judge.

Defendant was charged with trafficking in cocaine by possession and trafficking in cocaine by transportation. The trial court judge denied defendant's motion to suppress evidence discovered during a search of defendant's car. Defendant then entered a guilty plea as to both charges. The trial court consolidated the offenses and imposed the presumptive seven-year term and a $50,000 fine. Defendant appeals the denial of the motion to suppress. We affirm.

Defendant raises three issues on appeal: (1) whether the police officers seized and searched defendant without probable cause or reasonable articulable suspicion in violation of his constitutional rights, (2) whether there was a pretextual stop of his vehicle and

an unjustifiably long detention after the stop, and (3) whether the trial court erred in admitting evidence of the character of the neighborhood where defendant's automobile was stopped.

Our scope of appellate review for the denial of a motion to suppress is limited to determining whether the trial court's findings of fact are supported by competent evidence, in which case they are binding on appeal, and whether those findings of fact in turn support the conclusions of law. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

The trial court made the following findings of fact: On 25 September 1989, Officer L. E. Griffin was on patrol in the Town of Cornelius, North Carolina, when he received a call from the dispatcher that a black male in a black BMW with a temporary license tag was selling controlled substances from the car on Meridian Street. Within sixty seconds, Officer Griffin arrived at the street and saw a black BMW with a temporary license tag driven by a black male pass by him. Officer Griffin was unable to observe the effective dates of the temporary tag and it was his training and experience to stop and inquire about the validity of the registration and insurance coverage. Officer Griffin turned his car around and proceeded to stop the car which was being driven by defendant. A passenger, later identified by another officer as Scotty Ponder, sat in the front seat of the car.

Officer Griffin asked defendant for his driver's license and vehicle identification, but defendant stated that he had lost these items. When asked for some other form of identification, defendant mumbled a name which sounded to the officer like "Pawna." After several requests for identification and date of birth, Officer Griffin asked defendant to step out of the car. Once defendant stepped out of the car, Officer Griffin again asked defendant for identification and his date of birth. Defendant replied that the passenger in the car could identify him, and he gave conflicting dates for his date of birth.

Officer Griffin then placed defendant under arrest for giving false information. Officer Griffin searched defendant and discovered a card identifying him as Roger D. Cornelius. Officer Griffin learned by radio check that defendant's license had been permanently revoked. He placed defendant under arrest on a charge of driving while license revoked.

Sergeant L. D. Means also responded to the dispatcher's message and arrived at the scene shortly after Officer Griffin. While Officer Griffin talked to defendant, Sergeant Means smelled the odor of marijuana in the BMW and walked over to the BMW. At that point, Ponder, who had been moved to a patrol car, called to Sergeant Means and stated that there were drugs in a "waist bag" in the backseat of defendant's car. Officer Means found the bag in the backseat and discovered cocaine, baggies and a small set of scales. Upon a search of the vehicle, Sergeant Means found in the glove compartment a bill of sale, a warranty paper for the car, and some bank deposit slips. These findings of fact are supported by the testimony of Officer Griffin and Sergeant Means and are therefore binding on appeal.

Based upon the findings of fact, the trial court concluded that (1) the officer had probable cause to stop defendant's vehicle; (2) having probable cause to stop the vehicle, the officers had the right to remove defendant and the passenger from the car for the officers' protection; (3) Officer Griffin had probable cause to search the vehicle based upon what he observed outside the vehicle and the smell of marijuana; and (4) statements made by defendant were not in violation of his constitutional rights.

[1] Defendant contends that the officers violated his state and federal constitutional rights because they lacked probable cause or reasonable suspicion to justify the initial stop of the BMW. We disagree.

In *United States v. Cortez*, 449 U.S. 411, 417, 66 L.Ed.2d 621, 628 (1981), the United States Supreme Court stated that an investigatory stop of a vehicle is constitutionally permissible if the stop is "justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." Our state Supreme Court has echoed this standard in *State v. Trapper*, 48 N.C. App. 481, 486, 269 S.E.2d 680, 683, *appeal dismissed*, 301 N.C. 405, 273 S.E.2d 450 (1980), *cert. denied*, 451 U.S. 997, 68 L.Ed.2d 856 (1981), providing that an officer may make an investigatory stop of a vehicle "if the officer has a reasonable suspicion, that can be articulated, that a crime is being committed." The standard of reasonable suspicion to justify an investigatory search requires the court to examine both the articulable facts known to the officers at the time they determined to approach and investigate the activities of defendants, and the rational inferences which the officers

were entitled to draw from those facts. *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert. denied*, 444 U.S. 907, 62 L.Ed.2d 143 (1979).

Defendant argues that *State v. Williams*, 32 N.C. App. 204, 231 S.E.2d 282, *appeal dismissed*, 292 N.C. 470, 233 S.E.2d 924 (1977) is dispositive of this case. In *Williams*, a police officer saw defendant and another unidentified man join hands in "an area of substantial drug traffic." *Id.* at 206, 231 S.E.2d at 283. The officer did not see anything in the hands of either man. After the men joined hands, defendant put his left hand into his pocket and walked towards the motel where the officer was standing. The officer then approached defendant, asked for identification, and when defendant was unable to produce identification, told him to face the wall and assume frisking position. Defendant then fled but was caught by the officer and arrested. A search uncovered a bag and envelope of marijuana. *Id.* at 207, 231 S.E.2d at 284.

The trial court found that there was probable cause for the arrest. This Court reversed and remanded on the grounds that the officer did not have probable cause to make the arrest, stating:

> At most the circumstances would support a reasonable suspicion of defendant's possession of a contraband drug which would have justified an approach and temporary detention of the defendant in an appropriate manner for purposes of investigating his possible criminal behavior. Had the officer done so, he may well have been able to determine that defendant was in possession of marijuana. Instead, the officer resorted to aggressive and unlawful behavior.

*Id.* (citation omitted).

*Williams* is not dispositive of the case at bar. We find the facts of this case to be more analogous to *State v. Williams*, 87 N.C. App. 261, 360 S.E.2d 500 (1987), in which officers were sent to investigate break-ins that had just been reported. Upon arriving in the area, the officers met four black males in a Pontiac. The officers stopped the car, but then let the men leave shortly thereafter. After learning through a radio dispatch that stolen items had been located between the site of the break-ins and the site of the Pontiac stop, the officers stopped the Pontiac again and told the occupants to wait until another officer arrived to step outside. *Id.* at 262, 360 S.E.2d at 500. When the additional officer arrived, defendants

STATE v. CORNELIUS

[104 N.C. App. 583 (1991)]

stepped outside, and the officers observed stolen items. *Id.* at 263, 360 S.E.2d at 501-02. On appeal, this Court agreed that the stop was based on reasonable suspicion that the occupants were engaged in criminal activity. *Id.*

In the case at bar, the totality of circumstances warranted the initial stop of the vehicle. Officer Griffin stopped defendant's vehicle after receiving a dispatch that a black male in a black BMW with a temporary license tag was selling controlled substances on Meridian Street in a neighborhood with a reputation as a high crime area for sale of controlled substances. After the stop, Officer Griffin did not resort to aggressive and unlawful behavior; rather, he asked defendant for some identification. Once defendant failed to produce identification and gave conflicting birth dates, the officer made a lawful arrest for giving false information. The officer also arrested defendant for driving with a permanently revoked driver's license. Defendant's car was searched only after the lawful arrest, Officer Means smelled marijuana, the passenger indicated that there were drugs in the backseat, and Officer Means saw plastic baggies and small scales in the waist bag in the backseat.

Incident to a lawful arrest, an officer may search the passenger compartment of a vehicle and the containers therein without a search warrant. *New York v. Belton*, 453 U.S. 454, 460, 69 L.Ed.2d 768, 775 (1981); *State v. Cooper*, 304 N.C. 701, 705-06, 286 S.E.2d 102, 104-05 (1982). Here, the officer made a lawful arrest pursuant to N.C. Gen. Stat. §§ 20-29 (1989) and 20-28(b) (1989) after a lawful investigatory stop. In addition, we note that once Officer Means smelled marijuana near the car, he had probable cause to search the vehicle. *See State v. Greenwood*, 47 N.C. App. 731, 268 S.E.2d 835, 841 (1980), *rev'd on other grounds*, 301 N.C. 705, 273 S.E.2d 438 (1981). In *State v. Isleib*, 319 N.C. 634, 638, 356 S.E.2d 573, 576-77 (1987), the North Carolina Supreme Court held that "no other exigent circumstances other than the motor vehicle itself are required in order to justify a warrantless search of a motor vehicle if there is probable cause to believe that it contains the instrumentality of a crime or evidence pertaining to a crime and the vehicle is in a public place." Accordingly, we find the search lawful as incident to arrest and based upon probable cause and exigent circumstances.

Defendant further argues that Article I, Section 20 of the North Carolina Constitution, prohibiting general warrants, should

be construed more broadly than the prohibition against unreasonable search and seizures found in the Fourth Amendment of the United States Constitution. To support his point, defendant relies upon *State v. Carter*, 322 N.C. 709, 724, 370 S.E.2d 553, 562 (1988), in which the North Carolina Supreme Court refused to recognize a good faith exception to the legislatively created exclusionary rule. In *Carter* the Court recognized that "we have the authority to construe our own constitution differently from the construction by the United States Supreme Court of the Federal Constitution." *Id.* at 713, 370 S.E.2d at 555. Cornelius is not the first defendant since the *Carter* decision to assert that his state constitutional rights have been violated by an unreasonable search. *See, e.g., State v. Jones*, 96 N.C. App. 389, 386 S.E.2d 217 (1989), *appeal dismissed*, 326 N.C. 366, 389 S.E.2d 809 (1990). To date, we have not applied a different standard for determining the reasonableness of a stop under the North Carolina Constitution than under the United States Constitution, and we decline to do so here.

Considering the articulable facts known to Officer Griffin and the reasonable inferences drawn therefrom, we conclude that the officer did have at least reasonable suspicion that criminal activity was afoot when he stopped defendant's vehicle.

Defendant also contends that the trial court erred in denying the motion to suppress the evidence because the stop was based upon the pretext of an illegible temporary license tag. Officer Griffin testified that he stopped the car for two reasons: the radio dispatch and the illegible tag. Since we find that the officer had reasonable suspicion based upon the radio dispatch to justify the stop, we need not analyze the facts in light of defendant's contention that the stop was pretextual.

[2] Defendant argues that, even if Officer Griffin had reasonable suspicion to justify the initial stop of his vehicle, the stop exceeded its legitimate scope. We disagree. In *United States v. Sharpe*, 470 U.S. 675, 686, 84 L.Ed.2d 605, 615-16 (1985), the United States Supreme Court stated that

> [i]n assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.

*Id.* The court concluded that a twenty-minute delay between the initial stop of defendant's vehicle and his arrest was reasonable since the police acted diligently in their investigation, and defendant's evasive actions contributed to the delay. *Id.* at 687-88, 84 L.Ed.2d at 616-17.

Similarly, in the case before us, the officers acted diligently in their investigation. Certainly, an officer is permitted to ask for identification. *See INS v. Delgado*, 466 U.S. 210, 216, 80 L.Ed.2d 247, 255 (1984). As in *Sharpe*, defendant's own behavior in refusing to give his correct name and birth date was responsible for the delay about which he now complains. Although the trial court made no findings of fact regarding the length of detention, there was uncontradicted evidence that three to five minutes passed between the time of the stop and the initial arrest, and that a total of ten minutes lapsed between the time of the stop and Ponder's statement that there were drugs in the car. We find the stop did not exceed its legitimate scope.

[3] Finally, defendant contends that the trial court improperly considered testimony concerning the reputation of the neighborhood where the arrest occurred as a low income, high crime area known for controlled substances and for sales and delivery of controlled substances. Defendant incorrectly asserts that *State v. Givens*, 95 N.C. App. 72, 381 S.E.2d 869 (1989) is controlling on this issue. In *Givens*, we found that testimony regarding prior sales of alcohol at defendant's house was irrelevant in his trial for the manufacturing and possession of cocaine. *Id.* at 79, 381 S.E.2d at 873. The reputation testimony in the case before us does not attempt to establish defendant's guilt through prior acts or through his presence in a high crime area. Rather, the trial court considered the reputation testimony as part of the totality of the circumstances known to the officer at the time of the initial stop. In addition to his opinion of the neighborhood, the officer had received a radio dispatch indicating illegal activity, and within sixty seconds of receiving that dispatch observed a car and person matching the dispatch information. Reputation testimony concerning a particular area has been recognized in both United States Supreme Court cases and our state cases as a factor in establishing reasonable suspicion. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85, 45 L.Ed.2d 607, 618-19 (1975); *Adams v. Williams*, 407 U.S. 143, 147, 32 L.Ed.2d 612, 618 (1972); *State v. Williams*, 32 N.C. App. 204, 231 S.E.2d 282, *appeal dismissed*, 292 N.C. 470, 233 S.E.2d 924

(1977). We find no error in the admission of the reputation testimony here.

For all the reasons set forth above, the judgment below is

Affirmed.

Judges ORR and LEWIS concur.