IN THE MATTER OF: J.L.B.M., JUVENILE

No. COA05-500

(Filed 21 March 2006)

**1. Search and Seizure— stop of juvenile—generalized suspicion**

A stop leading to the detention of a juvenile was not justified, and the juvenile's motion to suppress evidence seized as a result of the stop should have been granted, where the officer relied on a report that there was a suspicious person at a gas station, that the juvenile matched the "Hispanic male" description of the suspicious person, that the juvenile was wearing baggy clothes, and

IN RE J.L.B.M.

[176 N.C. App. 613 (2006)]

that the juvenile chose to walk away from the patrol car. The officer had only a generalized suspicion of criminal behavior.

**2. Firearms and Other Weapons— concealed box cutter— fruit of illegal seizure**

A juvenile's motion to dismiss a charge of carrying a concealed weapon should have been dismissed where the only evidence of a concealed weapon was a box cutter obtained as the fruit of an illegal stop and the officer's testimony about the seizure of the box cutter.

**3. Confessions and Incriminating Statements— custodial nature of confession not clear—remanded**

The question of the sufficiency of the State's evidence of injury to real property was remanded where the evidence consisted of a can of spray paint that should have been suppressed as the fruit of an unreasonable stop, and the juvenile's confession in ambiguous circumstances. There is no question that the juvenile was thirteen years old and that there was no parent, guardian, custodian, or attorney at the questioning as required by N.C.G.S. § 7B-2101(b), and the issue is whether the admission was obtained during a custodial interrogation. There was no testimony and the trial court made no findings or conclusions on the issue.

**4. Obstructing Justice— giving false name—sufficiency**

There was sufficient evidence that a juvenile resisted, delayed, and obstructed an officer where the juvenile initially gave a false name. Although the stop was unreasonable and invalid, the facts are distinguishable from the cases concerned with resisting illegal arrests.

**5. Arson— burning public building—setting off fireworks in police interview room**

There was sufficient evidence to support a charge of burning a public building where a juvenile set off fireworks in an interview room at a police station. The willful and wanton element of the offense is supported by the juvenile's laughter while an officer tried to put out the fireworks, and the "setting fire" element is supported by the fireworks causing a flame two to three feet high which caused black markings on the floor and wall. Given the proximity of the fireworks to the wall and the resulting flame and damage, an intent to "set fire" can be inferred. N.C.G.S. § 14-59.

**IN RE J.L.B.M.**

[176 N.C. App. 613 (2006)]

**6. Juveniles— commitment order—maximum term omitted from written order**

A juvenile commitment order was remanded for correction of a clerical error where the court orally found that the commitment could not exceed the juvenile's eighteenth birthday, but omitted the finding from the written order. N.C.G.S. § 7B-2513(a).

**7. Juveniles— release pending appeal denied—compelling reason not stated—remanded**

An order denying the release of a juvenile pending appeal which did not state compelling reasons was remanded for appropriate findings. N.C.G.S. § 7B-2605.

Appeal by juvenile from orders entered 2 September 2004 and 20 September 2004 by Judge Bradley R. Allen, Sr. in District Court, Alamance County. Heard in the Court of Appeals 23 January 2006.

*Attorney General Roy Cooper, by Assistant Attorney General June S. Ferrell, for the State.*

*Anne Bleyman for juvenile-appellant.*

McGEE, Judge.

J.L.B.M., a juvenile, appeals from orders adjudicating him delinquent, committing him to the Department of Juvenile Justice and Delinquency Prevention for an indefinite period of time, and denying his release from custody pending appeal. For the reasons set forth below, we (1) affirm the adjudication order in part, reverse in part, and remand in part for further findings; and (2) we vacate and remand the commitment order and the order denying release of the juvenile.

Juvenile petitions were filed on 14 July 2004 alleging that J.L.B.M. (the juvenile) was delinquent in that he committed the following acts: (1) set fire to, burned, or caused to be burned a government building in violation of N.C. Gen. Stat. § 14-59; (2) damaged real property in violation of N.C. Gen. Stat. § 14-127; (3) resisted, delayed, and obstructed an officer in violation of N.C. Gen. Stat. § 14-223; and (4) carried a concealed weapon in violation of N.C. Gen. Stat. § 14-269(a1).

Evidence at the hearing tended to show the following: While on patrol at approximately 6:00 p.m. on 6 July 2004, Officer D.H.

IN RE J.L.B.M.

[176 N.C. App. 613 (2006)]

Henderson (Officer Henderson) responded to a police dispatch of a "suspicious person" at an Exxon gas station in Burlington, North Carolina. The only description given of the person was "Hispanic male." Officer Henderson saw a person in the gas station parking lot, later identified as the juvenile, who fit the description of the person. When the juvenile saw Officer Henderson, he walked over to a vehicle in the parking lot, spoke to someone, and then began walking away from Officer Henderson's patrol car. Officer Henderson pulled up beside the juvenile in an adjoining restaurant parking lot and stopped the juvenile. Upon getting out of the patrol car and speaking with the juvenile, Officer Henderson noticed a bulge in the juvenile's pocket. Officer Henderson patted down the juvenile for weapons. Officer Henderson found and seized a dark blue, half-empty spray can of paint and a box cutter with an open blade. In response to being asked his name, the juvenile replied, "Oscar Lopez."

Officer Henderson transported the juvenile to a nearby shopping center where graffiti had recently been sprayed. Officer Henderson testified that the graffiti, which was blue, read: "Sir 13, Mr. Puppet 213." Officer Henderson testified that the juvenile initially said that "Mr. Puppet" had done the graffiti, and that the juvenile later identified himself as "Mr. Puppet."

Officer Henderson drove the juvenile to the police station, again patted him down, and found fireworks in the juvenile's pocket. Officer Henderson let the juvenile keep the fireworks. The juvenile was placed in an interview room, where several officers questioned him about his name. The juvenile continued to give the name "Oscar Lopez." Officer Wendy P. Jordan (Officer Jordan) recognized the juvenile's face and called him by his real name, "J——." The juvenile replied, "[M]y name is J—— L— mother f—— M——. You found me out."

The juvenile was eventually left alone in the interview room with the door ajar. Officer R.V. Marsh (Officer Marsh) testified that he noticed the room "got real quiet," and he looked into the room. Officer Marsh saw the juvenile trying to light something with a lighter, then saw a two to three-foot flame come out of the floor and up the wall. Officer Jordan testified that she saw sparks flying. The fireworks left black soot on the floor and wall.

The juvenile presented no evidence. At the close of the hearing, the juvenile made a motion to dismiss, which was denied by the trial court. The trial court adjudicated the juvenile delinquent and entered

**IN RE J.L.B.M.**

[176 N.C. App. 613 (2006)]

a disposition committing the juvenile to a period of indefinite commitment. The juvenile appeals.

---

The juvenile argues more than a dozen assignments of error on appeal, which we will discuss as four issues: whether the trial court erred by (I) denying the juvenile's motion to suppress evidence obtained during a search of the juvenile; (II) denying the juvenile's motion to dismiss each allegation; (III) failing to include a maximum term of commitment in the written order of commitment; and (IV) failing to state in writing the compelling reasons for denying the juvenile's release pending appeal.

We note that at the same time as the trial court entered its disposition order on the four offenses discussed herein, it revoked the juvenile's probation for three prior offenses. Arguably, the juvenile assigned error to this order, but failed to argue it in his brief. As such, it is deemed abandoned. N.C.R. App. P. 28(b)(6).

I.

[1] The juvenile first argues the trial court erred in denying his motion to suppress evidence obtained after the juvenile was stopped and searched by Officer Henderson. The juvenile contends there were insufficient grounds for stopping the juvenile, and therefore any evidence obtained as a result of the stop was inadmissible and should have been suppressed.

A trial court's findings of fact made after a suppression hearing are binding on the appellate courts if supported by competent evidence. *State v. Brooks*, 337 N.C. 132, 140, 446 S.E.2d 579, 585 (1994). A trial court's conclusions of law are reviewed *de novo* on appeal. *State v. Kincaid*, 147 N.C. App. 94, 97, 555 S.E.2d 294, 297 (2001).

In the present case, the trial court made the following relevant findings of fact:

> that on or about July 6, 2004 . . . Officer Henderson, a 27 year veteran of the Burlington Police Dept. had received a call of a suspicious activity at Coy's Exxon on the corner of Graham-Hopedale Rd. and N. Church St. That location has had numerous calls for shoplifting[,] fights[,] and other activity. Also there is numerous gang and graffiti activity at that end of town. The call was for a suspicious person being a Hispanic male. The officer went specifically to that location and the juvenile matches the description of

**IN RE J.L.B.M.**

[176 N.C. App. 613 (2006)]

being a Hispanic male[,] and[,] according to the officer's testimony, he was wearing gang attire, large baggy clothes.

We uphold the trial court's findings, with the exception of the finding that the dispatch call was about "suspicious activity," because Officer Henderson testified that the dispatch was about a "suspicious person" at the Exxon gas station. Officer Henderson testified as follows:

A [T]he [dispatch] call was a suspicious person at the [Exxon] station at the corner of Graham-Hopedale and Church Street.

. . . .

Q What time of the day or night was that?

A It was right before 6 o'clock p.m.

. . . .

A . . . I saw a person fitting [the] description in the parking lot at Coy's. When he saw me, he walked over to a vehicle in the parking lot, spoke to somebody and immediately began walking away. As I approached, [I] stopped him in the parking lot next door of Kentucky Fried Chicken.

Q Do you recall the description that you were given of that suspicious person?

A No, I do not, other than Hispanic male.

Officer Henderson continued his testimony during a *voir dire:*

Q Officer, at the time you got the call about suspicious activity [sic], was any criminal activity alleged?

A Not from what our dispatcher gave us, no.

Q Okay. And did you, up to the point where you stopped [the juvenile], did you ever see him committing any illegal act?

A No, sir.

Q Okay. And you, he was walking away from you, and you asked him to stop and patted him down?

A He looked in my direction and then turned and walked away. Yes, sir.

. . . .

Q And nothing [criminal] in particular with [regard to] [the juvenile] that you know of?

A Other than he was wearing gang attire.

Q What kind of attire was that?.

A Large baggy clothes.

Q Is that it?

A I guess that's it.

The trial court further found there was a "reasonable, [articulable] suspicion that some criminal activity may have taken place" and distinguished the present case from *State v. Fleming*, 106 N.C. App. 165, 415 S.E.2d 782 (1992). Although labeled as findings, these determinations are actually conclusions of law, in that they require the exercise of judgment and application of legal principles. *See In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997). As such, they are reviewable *de novo* on appeal. *See Kincaid*, 147 N.C. App. at 97, 555 S.E.2d at 297.

The Fourth Amendment protects the right of individuals to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. This protection is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655, 6 L. Ed. 2d 1081, 1090 (1961). The right to be free from unreasonable searches and seizures applies to seizures of the person, including brief investigatory stops. *Terry v. Ohio*, 392 U.S. 1, 16-19, 20 L. Ed. 2d 889, 903-05 (1968). "An investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' " *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (quoting *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979)). Whether an officer had a reasonable suspicion to make an investigatory stop is evaluated under the totality of the circumstances. *Id.* (citing *U.S. v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981)).

The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by [the officer's] experience and training. The only requirement is a minimal level of objective justification, something more than an "unparticularized suspicion or hunch."

**IN RE J.L.B.M.**

[176 N.C. App. 613 (2006)]

*Id.*, 337 N.C. at 441-42, 446 S.E.2d at 70 (quoting *U.S. v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)) (other citations omitted).

The juvenile argues that the facts of this case are analogous to those in *Fleming*. In *Fleming*, our Court held that a stop and frisk was unjustified where an officer relied solely on the fact that a defendant was standing in an open area between two apartment buildings shortly after midnight and chose to walk away from a group of officers. *Fleming*, 106 N.C. App. at 171, 415 S.E.2d at 785. From those facts, our Court held that the officer in *Fleming* had only a "generalized suspicion that the defendant was engaged in criminal activity, based upon the time, place, and the officer's knowledge that defendant was unfamiliar in the area." *Id.* The defendant's actions "were not sufficient to create a reasonable suspicion that [the] defendant was involved in criminal conduct, it being neither unusual nor suspicious that [the defendant] chose to walk in a direction which led away from [a] group of officers." *Fleming*, 106 N.C. App. at 170-71, 415 S.E.2d at 785.

In the present case, the dispatch did not allege that the "suspicious person" was engaged in any criminal activity. *Cf. In re Whitley*, 122 N.C. App. 290, 292, 468 S.E.2d 610, 612, *disc. review denied*, 344 N.C. 437, 476 S.E.2d 132 (1996) (holding that articulable facts sufficient to support a stop included a telephone call that two black males were selling drugs at a particular location, discovery of the juvenile at that location with another black male, and the juvenile's nervous body reflexes); *State v. Wilson*, 112 N.C. App. 777, 779, 437 S.E.2d 387, 388 (1993) (holding that an officer responding to a call that individuals were dealing drugs had more than a generalized suspicion); *State v. Cornelius*, 104 N.C. App. 583, 585-88, 410 S.E.2d 504, 506-08 (1991), *disc. review denied*, 331 N.C. 119, 414 S.E.2d 762 (1992) (holding that an officer had reasonable suspicion to justify an investigatory stop of an automobile where the officer received a dispatch that a black male in a black BMW with a temporary license tag was selling controlled substances, and the officer observed a person in an automobile fitting that description less than one minute later). Rather, the dispatch specified only that there was a suspicious person described as a Hispanic male. There was no approximate age, height, weight or other physical characteristics given as part of the description, nor was there a description of any specific clothing worn by the suspicious person. *Cf. State v. Lovin*, 339 N.C. 695, 703-04, 454 S.E.2d 229, 234 (1995) (holding circumstances supporting reasonable suspicion included a description of a suspicious person with "a 'lot of hair,' a

gold watch and large frame glasses"); *State v. Jordan,* 120 N.C. App. 364, 367-68, 462 S.E.2d 234, 237, *disc. review denied,* 342 N.C. 416, 465 S.E.2d 546 (1995) (holding specific articulable facts sufficient to justify a stop included a description of the defendants' clothing).

Moreover, Officer Henderson did not observe the juvenile committing any criminal acts, nor had there been other reports of any criminal activity in the area that day. *Cf. State v. Thompson,* 296 N.C. 703, 707, 252 S.E.2d 776, 779, *cert. denied,* 444 U.S. 907, 62 L. Ed. 2d 143 (1979) (holding circumstances supporting reasonable suspicion for an investigatory stop of occupants of a van included that the van was located near the vicinity where officers had reports earlier that evening of break-ins involving a van). Although the trial court found that police had received calls for shoplifting, fights, "and other activity" from the gas station, and that "that end of town" had gang and graffiti activity, the State offered no evidence of whether any past calls of shoplifting, fights, or other activity had led to any actual arrests. *Cf. State v. Butler,* 331 N.C. 227, 233, 415 S.E.2d 719, 722 (1992) (holding circumstances supporting reasonable suspicion to make a stop included that the defendant was on a corner on which recent, multiple drug-related arrests had been made). Moreover, the juvenile was stopped at approximately 6:00 p.m. on a summer evening in front of an open business. *Cf. State v. Rinck,* 303 N.C. 551, 555-60, 280 S.E.2d 912, 916-20 (1981) (holding circumstances supporting a reasonable basis for a stop included that the defendants were walking along a road at an "unusual hour" of approximately 1:35 a.m.); *State v. Blackstock,* 165 N.C. App. 50, 59, 598 S.E.2d 412, 418 (2004), *disc. review denied,* 359 N.C. 283, 610 S.E.2d 208 (2005) (holding reasonable and articulable suspicion existed to support an investigatory stop of a vehicle where the defendant and driver were observed loitering at a closed shopping center shortly before midnight, no other vehicles were in the parking lot, and the two men abruptly and hurriedly returned to their vehicle, which was parked out of general public view).

The State argues "[i]t is clear from the record that Officer Henderson had a reasonable suspicion that the juvenile was involved in suspicious activity." However, the rule is clear under both federal and state law that an officer must have a reasonable and articulable suspicion of "criminal activity," not merely suspicious activity. *See Brown v. Texas,* 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979); *Watkins,* 337 N.C. at 441, 446 S.E.2d at 70. Even viewed through the eyes of a reasonable, cautious officer, *see id.,* the facts relied on by

**IN RE J.L.B.M.**

[176 N.C. App. 613 (2006)]

Officer Henderson are inadequate to show more than an unparticularized suspicion or hunch that the juvenile was involved in criminal activity.

We hold that in the present case, like in *Fleming*, the stop was unjustified. Officer Henderson relied solely on the dispatch that there was a suspicious person at the Exxon gas station, that the juvenile matched the "Hispanic male" description of the suspicious person, that the juvenile was wearing baggy clothes, and that the juvenile chose to walk away from the patrol car. Officer Henderson was not aware of any graffiti or property damage before he stopped the juvenile, and he testified that he noticed the bulge in the juvenile's pocket after he stopped the juvenile.

From those facts, we find that Officer Henderson had only a "generalized suspicion that the [juvenile] was engaged in criminal activity[.]" *Fleming*, 106 N.C. App. at 171, 415 S.E.2d at 785. Even viewed as a whole picture, the facts and circumstances were inadequate to create a reasonable suspicion that the juvenile was involved in criminal activity. The stop was therefore an unreasonable intrusion upon the juvenile's Fourth Amendment right to privacy. The trial court erred in denying the juvenile's motion to suppress evidence obtained thereby. *See Mapp*, 367 U.S. 655, 6 L. Ed. 2d 1090.

II.

[2] The juvenile's second assignment of error is that the trial court erred in denying the juvenile's motion to dismiss the underlying allegations. At trial, the juvenile argued there was insufficient evidence of each allegation.

In reviewing a motion to dismiss a juvenile petition, the evidence must be considered in the light most favorable to the State, which is entitled to every reasonable inference that may be drawn from the evidence. *In re Brown*, 150 N.C. App. 127, 129, 562 S.E.2d 583, 585 (2002). "[I]n order to withstand a motion to dismiss the charges contained in a juvenile petition, there must be substantial evidence of each of the material elements of the offense charged." *In re Bass*, 77 N.C. App. 110, 115, 334 S.E.2d 779, 782 (1985). If the evidence raises merely " 'suspicion or conjecture as to either the commission of the offense or the identity of the [juvenile] as the perpetrator of it, the motion should [have been] allowed.' " *In re Heil*, 145 N.C. App. 24, 28, 550 S.E.2d 815, 819 (2001) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)).

The juvenile argues the State presented insufficient evidence of the allegation of carrying a concealed weapon because the State's sole evidence was the fruit of an illegal stop. We agree. We have held that the stop of the juvenile was unreasonable and that evidence obtained as a result of the illegal stop should have been suppressed by the trial court. Such evidence includes the box cutter found by Officer Henderson in the juvenile's pants pocket. Other than the illegally obtained box cutter, and Officer Henderson's testimony about its seizure, the State presented no evidence to support the allegation of carrying a concealed weapon. Accordingly, the trial court erred in denying the juvenile's motion to dismiss this allegation, as there was insufficient admissible evidence that the juvenile was carrying a concealed weapon.

[3] The juvenile also challenges the sufficiency of the State's evidence of the allegation of injury to real property. This argument has some merit. At trial, the State presented evidence of a spray can of paint obtained by Officer Henderson during his stop of the juvenile. We have held that Officer Henderson's stop of the juvenile was unreasonable. Therefore, the spray can of paint should have been suppressed by the trial court, and cannot be used to support this allegation.

Along with the spray can of paint, the State introduced evidence of the juvenile's statement that "Mr. Puppet" had sprayed the graffiti, and evidence of the juvenile's confession that he was in fact "Mr. Puppet." Officer Henderson testified that at the scene of the graffiti, he "had a conversation with" the juvenile, and the juvenile stated that "Mr. Puppet" had sprayed the graffiti. Officer Henderson also testified that after being transported to the police department, the juvenile admitted to being "Mr. Puppet." The juvenile argues this testimony was introduced in violation of his *Miranda* rights.

"In *Miranda v. Arizona*, the United States Supreme Court held that a suspect must be informed of his rights upon being arrested: that is, to remain silent, to an attorney and that any statement made may be used as evidence against him." *State v. Miller*, 344 N.C. 658, 666, 477 S.E.2d 915, 920 (1996) (citing *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966)) (internal citation omitted). In addition to these constitutional rights, our General Assembly has granted to juveniles certain statutory protections, including the right to have a parent, guardian or custodian present during questioning. N.C. Gen. Stat. § 7B-2101 (2005) provides in relevant part:

(a) Any juvenile in custody must be advised prior to questioning:

    (1) That the juvenile has a right to remain silent;

    (2) That any statement the juvenile does make can be and may be used against the juvenile;

    (3) That the juvenile has a right to have a parent, guardian, or custodian present during questioning; and

    (4) That the juvenile has a right to consult with an attorney. . . .

(b) When the juvenile is less than 14 years of age, no in-custody admission or confession resulting from interrogation may be admitted into evidence unless the confession or admission was made in the presence of the juvenile's parent, guardian, custodian, or attorney. . . .

It is undisputed that the juvenile was thirteen years old at the time of the questioning, and that no parent, guardian, custodian or attorney was present during the time the juvenile made any statements. Therefore, if the juvenile's admissions were obtained during a custodial interrogation, they would be inadmissible. *See In Re Butts*, 157 N.C. App. 609, 612, 582 S.E.2d 279, 282 (2003).

The determination of whether a juvenile is in custody is whether, "based upon the trial court's findings of fact, a reasonable person in [the juvenile's] position would have believed that he was under arrest or was restrained in his movement to that significant degree." *State v. Garcia*, 358 N.C. 382, 396, 597 S.E.2d 724, 737 (2004), *cert. denied*, ⸺ U.S. ⸺, 161 L. Ed. 2d 122 (2005) (citing *State v. Buchanan*, 353 N.C. 332, 339-40, 543 S.E.2d 823, 828 (2001)). However, the trial court made no findings or conclusions as to whether the juvenile's statements about "Mr. Puppet" were made during a custodial interrogation. The order stated only that "[t]he juvenile was questioned about [the graffiti] and he stated that somebody else did it[,] a Mr. Puppet" and that "[l]ater at the police dept. [the juvenile] admitted that he was Mr. Puppet." Moreover, there is insufficient evidence in the record on this issue, with no testimony as to whether the juvenile was in custody or being interrogated when he allegedly stated that "Mr. Puppet" had painted the graffiti. There is no testimony as to when exactly the juvenile admitted to being "Mr. Puppet," or under what circumstances he made such an admission. The only evidence of the juvenile's admission is the testimony of Officer Henderson that during a "conversa-

tion" about the graffiti, the juvenile told him "Mr. Puppet" had done it, and "[l]ater at the police department, [the juvenile] identified himself as Mr. Puppet." Accordingly, we cannot discern whether the juvenile's admissions were made in response to custodial interrogation in violation of the juvenile's constitutional and statutory rights. We therefore remand for findings on whether the juvenile was in custody at the time of his questioning, and whether his statements were the result of interrogation. *See Buchanan*, 353 N.C. 332, 543 S.E.2d 823 (remanding for a determination of whether the defendant was in custody for purposes of *Miranda*); *State v. Johnson*, 310 N.C. 581, 313 S.E.2d 580 (1984) (remanding for findings where "*voir dire* evidence and the trial judge's findings [were] insufficient to permit adequate review by the appellate courts" of legality of search); *In re Young*, 78 N.C. App. 440, 337 S.E.2d 185 (1985) (remanding for findings on compliance with prior version of N.C. Gen. Stat. § 7B-2101).

If the trial court determines the juvenile's statements were inadmissible, then the trial court's denial of the motion to dismiss this allegation will have been error. Without the spray can of paint, or the juvenile's confession, the State's evidence was insufficient to support an adjudication of delinquency on the underlying allegation of injury to real property.

[4] The juvenile also argues the trial court erred in denying his motion to dismiss the allegation of resisting an officer in violation of N.C. Gen. Stat. § 14-223. The elements of resisting an officer are that a person (1) willfully and unlawfully; (2) resists, delays or obstructs; (3) a public officer; (4) who is discharging or attempting to discharge a duty of office. N.C. Gen. Stat. § 14-223 (2005). In the present case, the petition alleged that the juvenile resisted, delayed, and obstructed Officer Henderson by giving a false name at the time Officer Henderson was conducting an investigation. The trial court found that by insisting his name was "Oscar Lopez," the juvenile delayed Officer Henderson's investigation of the offenses of injury to real property and carrying a concealed weapon.

The juvenile argues that since Officer Henderson's stop was invalid, the juvenile was within his right to give a false name. We disagree and hold that the invalid stop did not give the juvenile license to subsequently lie about his identity to Officer Henderson. *See, e.g., State v. Miller*, 282 N.C. 633, 641, 194 S.E.2d 353, 358 (1973) (holding that a defendant was not excused for his subsequent criminal behavior even though police entered the premises on an invalid search war-

rant). The juvenile argues the well-established rule that a person has the right to resist an illegal arrest. *See, e.g., State v. McGowan,* 243 N.C. 431, 90 S.E.2d 703 (1956); *State v. Hewson,* 88 N.C. App. 128, 362 S.E.2d 574 (1987). However, the facts of the present case are distinguishable from the line of cases dealing with illegal arrest. In *Hewson,* for example, this Court held that a motion to dismiss a charge of resisting arrest should have been granted where the underlying arrest was illegal, because a lawful arrest was a necessary element of the charge. *Hewson,* 88 N.C. App. at 132, 362 S.E.2d at 576-77. In this case, the State presented substantial evidence of each element of the allegation of resisting, delaying, or obstructing an investigation. In giving Officer Henderson a false name, the juvenile delayed the officer's investigation, including any attempt to contact the juvenile's parent or guardian. Accordingly, we affirm the trial court's denial of the juvenile's motion to dismiss this allegation.

[5] By his next assignment of error, the juvenile argues the trial court erred in denying his motion to dismiss the allegation of burning a public building. Under the facts of this case, in order to survive the juvenile's motion to dismiss, the State must have presented substantial evidence of each of the following elements: (1) the juvenile wantonly and willfully; (2) set fire to the police station; and (3) the building was owned or occupied by an incorporated city or town. N.C. Gen. Stat. § 14-59 (2005).

The juvenile first challenges the sufficiency of the State's evidence on the "wanton and willful" element of the offense. To be wanton and willful, "it must be shown that [an] act was done intentionally, without legal excuse or justification, and with knowledge of or reasonable grounds to believe that the act would endanger the rights or safety of others." *State v. Payne,* 149 N.C. App. 421, 424, 561 S.E.2d 507, 509 (2002). In the present case, the State did not introduce any direct evidence that the juvenile set off fireworks with knowledge of or reasonable grounds to believe that the act would endanger the rights or safety of others. However, it is well-established that "[i]ntent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." *State v. Bell,* 285 N.C. 746, 750, 208 S.E.2d 506, 508 (1974). Officer Marsh testified that the juvenile laughed when Officer Marsh attempted to put out the fireworks. Viewed in the light most favorable to the State, this evidence is sufficient to give rise to an inference that the juvenile's act was wanton and willful. Accordingly, this element of N.C.G.S. § 14-59 is supported by the evidence.

IN RE J.L.B.M.

[176 N.C. App. 613 (2006)]

The juvenile also challenges the sufficiency of the State's evidence on the "setting fire" element of the offense. N.C.G.S. § 14-59 refers to four acts which constitute the operative element of the offense: (1) set fire to; (2) burn; (3) cause to be burned; or (4) aid, counsel or procure the burning of the building. The trial court found that the juvenile's act of setting off fireworks ignited a flame approximately two to three feet high, which caused "black markings on the floor and white markings on the wall" of the interview room. The trial court found that "this is not burning" but noted that "burning is not required to meet the elements [of N.C.G.S. § 14-59] but setting fire does meet the elements." Therefore, in order to find the juvenile in violation of N.C.G.S. § 14-59, we must uphold the trial court's conclusion that the juvenile's act of igniting fireworks constituted "setting fire" to the police department building.

We note that N.C.G.S. § 14-59 does not define the act of setting fire. *See* N.C.G.S. § 14-59. Nor has North Carolina case law interpreted what act is necessary to constitute setting fire to a government building under this statute. However, in *State v.* Hall, 93 N.C. 571 (1885), our Supreme Court held that "set fire to" is distinct and different from "burn." The Court reasoned that "it is certainly possible to set fire to some articles which, by reason of the sudden extinction of the fire, may fail to change by charring even the material to which it has been applied, so that the defendant may have done the act imputed and yet not *burned* it within the meaning of the act [of 1875.]" *Hall*, 93 N.C. at 574.

Moreover, in *State v. Avery*, 315 N.C. 1, 337 S.E.2d 786 (1985), our Supreme Court held that where a defendant ignited a fire bomb in a building, which caused blackening of the tile floor, a steel cabinet, and an office partition, the act of igniting the fire bomb was sufficient to support a conviction for the lesser included offense of attempting to set fire to or burn a building under N.C. Gen. Stat. § 14-67.1. The State was not required to prove a "burning" in order to prove an attempt to burn or set fire. *Avery*, 315 N.C. at 25, 337 S.E.2d at 799. We note that, unlike the facts of *Avery*, the juvenile in the present case did not set off a fire bomb, but rather set off fireworks. While this factual distinction may be significant under different facts, the facts here are that the juvenile set off fireworks "near the wall" of the interview room. Given the proximity of the fireworks to the wall and the resulting flame and damage, we infer an intent to set fire with the fireworks. *See State v. Grigsby*, 351 N.C. 454, 457, 526 S.E.2d 460, 462 (2000) (holding that an individual is presumed

to intend the natural consequences of the individual's actions). Accordingly, the trial court did not err in denying the juvenile's motion to dismiss this allegation.

### III.

[6] The juvenile next argues the trial court erred in omitting from the commitment order the maximum term of commitment, in violation of N.C. Gen. Stat. § 7B-2513(a), which requires a trial court to determine the maximum period of time for which a juvenile may remain committed and to notify the juvenile of that determination. The State concedes the error. While the trial court made the proper finding orally that commitment would not exceed the juvenile's eighteenth birthday, this term was omitted from the written order. Once the record on appeal has been filed with an appellate court, the trial court is divested of jurisdiction to correct a clerical error. *See State v. Dixon*, 139 N.C. App. 332, 337, 533 S.E.2d 297, 301 (2000). Accordingly, we remand to the trial court with instructions to correct the clerical error on the commitment order.

### IV.

[7] The juvenile's final argument is that the trial court erred in not stating its compelling reasons for denying the release of the juvenile pending appeal, in violation of N.C. Gen. Stat. § 7B-2605. N.C. Gen. Stat. § 7B-2605 (2005) provides:

> Pending disposition of an appeal, the release of the juvenile, with or without conditions, should issue in every case unless the court orders otherwise. For compelling reasons which must be stated in writing, the court may enter a temporary order affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile or the State.

The State concedes the error. Accordingly, we vacate the order denying the juvenile's release pending appeal and remand the matter to the trial court for findings as to the compelling reasons for denying release. As we noted in *In re Lineberry*, "we are aware of the likelihood that the passage of time may have rendered the issue of [the] juvenile's custody pending appeal moot." 154 N.C. App. 246, 256, 572 S.E.2d 229, 236 (2002), *cert. denied*, 356 N.C. 672, 577 S.E.2d 624 (2003). Moreover, we note that this error by the trial court has no effect on the juvenile's adjudication or disposition. *See id.* (citing *In re Bullabough*, 89 N.C. App. 171, 184, 365 S.E.2d 642, 649 (1988)).

The 20 September 2004 order adjudicating the juvenile delinquent is hereby

Affirmed in part, reversed in part, and remanded in part.

The 2 September 2004 order committing the juvenile for an indefinite period of time is hereby

Vacated and remanded.

The 20 September 2004 order denying release of the juvenile pending appeal is hereby

Vacated and remanded.

Chief Judge MARTIN and Judge STEELMAN concur.