DILLON, Judge.
 

 Defendant Reine Struddy Augustin appeals from the trial court's judgment following his guilty plea for carrying a concealed handgun. Defendant challenges the trial court's denial of his motion to suppress the gun. We find no error.
 

 I. Background
 

 The arresting officer discovered Defendant carrying a concealed handgun during a stop. Defendant moved to suppress the discovery of the gun, contending that the officer did not have reasonable suspicion to seize Defendant. The findings the trial court made based on the evidence presented at the suppression hearing tended to show as follows:
 

 On 22 January 2016 at 1:37 a.m., the arresting officer was patrolling a high-crime area in Salisbury when he saw Defendant and Ariel Peterson walking together on a sidewalk. It was snowing, and the officer had not seen anyone else out on the roads. The officer stopped his car and approached the two men. Though he was not investigating anything at the time, the officer was aware of multiple recent crimes in the area. The officer had prior interactions with Defendant and knew Defendant lived some distance away.
 
 [1]
 

 The officer asked Defendant and Mr. Peterson their names. Initially, Mr. Peterson gave a false name. Defendant did not.
 

 The officer asked Defendant and Mr. Peterson where they were coming from and where they were going. Both Mr. Peterson and Defendant gave vague answers. Specifically, though both claimed that they had been at the house of Mr. Peterson's girlfriend and were walking back to Defendant's home, they were unable or unwilling to provide the location where Mr. Peterson's girlfriend lived.
 

 Defendant then asked the officer for a ride to his house. The officer agreed, and the three walked to the rear passenger door of the patrol car. The officer then informed Defendant and Mr. Peterson that police procedure required him to search them prior to allowing them in the patrol car. Up to this point, Defendant had been polite, cooperative, and courteous.
 

 As the officer began to frisk Mr. Peterson, Mr. Peterson turned and quickly ran away. The officer turned to Defendant, who had begun taking steps away from the officer. The officer believed that Defendant was about to run away as well, so he grabbed Defendant's shoulders, placed Defendant face-down on the ground, and handcuffed him. As the officer rolled Defendant over to help him stand to his feet, the officer observed a handgun that had fallen out of Defendant's waistband.
 

 The trial court's order also included the following findings of fact:
 

 *856
 
 28. Prior to [Mr. Peterson] running away, the officer's encounter with these two young men was a consensual encounter.
 

 29. [Mr. Peterson's] flight and the officer's belief Defendant was going to flee provided the officer reasonable suspicion a crime is, was, or was about to be committed and permitted the officer to physically detain Defendant for further investigation.
 

 Based on its findings, the trial court concluded, in part, as follows:
 

 1. Based on the totality of the circumstances, to include these individuals [sic] young age, the icy weather conditions, the time of night that [the officer] encountered them, Peterson initially providing a false name and date of birth and saying he did so because he didn't like cops, and that the encounter up to the point that Peterson fled was consensual, the court finds that [the officer] had reasonable suspicion to physically detain Defendant for further investigation.
 

 After his motion to suppress was denied, Defendant pleaded guilty to carrying a concealed handgun, reserving his right to appeal the denial of his motion to suppress. Defendant timely appealed.
 

 II. Analysis
 

 Defendant argues that he was unlawfully seized when the officer discovered the gun. We disagree.
 

 "The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law."
 
 State v. Saldierna
 
 ,
 
 369 N.C. 401
 
 , 405,
 
 794 S.E.2d 474
 
 , 477 (2016) (citation omitted). Factual findings by the trial judge are binding on appeal if there is evidence to support them, even if the evidence might lead to an alternate finding.
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982). Conclusions of law made by the trial judge are reviewed
 
 de novo
 
 .
 
 State v. Ortiz-Zape
 
 ,
 
 367 N.C. 1
 
 , 5,
 
 743 S.E.2d 156
 
 , 159 (2013).
 

 Both the federal and North Carolina constitutions protect persons from "unreasonable searches and seizures." U.S. Const. amend. IV ; N.C. Const. art. I, § 20. In order to seize and detain a person, an officer must have reasonable suspicion that a crime has been or is about to be committed.
 
 See
 

 State v. Watkins
 
 ,
 
 337 N.C. 437
 
 , 441,
 
 446 S.E.2d 67
 
 , 70 (1994). Reasonable suspicion "must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training."
 
 Id.
 
 at 441-42,
 
 446 S.E.2d at 70
 
 .
 

 The trial court made a number of findings. Though each finding, standing alone, may not give rise to reasonable suspicion, we must determine whether the findings,
 
 taken together
 
 , do give rise to reasonable suspicion.
 

 Here, Defendant challenges the trial court's finding that he was likely to flee and argues that this finding should not have been included in the trial court's reasonable suspicion calculus. That is, if the officer did not yet have reasonable suspicion just prior to Defendant's act of backing away, then Defendant was constitutionally free to leave at that point. And the fact that Defendant may have been simply exercising his right to end a consensual encounter should not tip the scales to support reasonable suspicion. We agree that a finding that a defendant was simply exercising his constitutional right to leave a consensual encounter should not be used against Defendant to tip the scale towards reasonable suspicion.
 
 See
 

 State v. Icard
 
 ,
 
 363 N.C. 303
 
 , 318,
 
 677 S.E.2d 822
 
 , 832 (2009) (citing
 
 United States v. Mendenhall
 
 ,
 
 446 U.S. 544
 
 , 554,
 
 100 S.Ct. 1870
 
 ,
 
 64 L.Ed.2d 497
 
 (1980) ) (stating that the long-established hallmark of a consensual encounter is that a reasonable person would feel free to leave). We do note, though, that the
 
 manner
 
 in which Defendant exercises this right could, in some cases, be used to tip the scale.
 
 Compare
 

 Illinois v. Wardlow
 
 ,
 
 528 U.S. 119
 
 , 124-25,
 
 120 S.Ct. 673
 
 ,
 
 145 L.Ed.2d 570
 
 (2000) (stating that the defendant's running away from a
 
 *857
 
 consensual encounter with officers may contribute to a reasonable suspicion calculus),
 
 with
 

 In re J.L.B.M.
 
 ,
 
 176 N.C. App. 613
 
 , 622,
 
 627 S.E.2d 239
 
 , 245 (2006) (stating that the defendant merely walking away from a patrol car did not support reasonable suspicion).
 

 In any event, we need not determine whether it was appropriate for the trial court to consider the fact that Defendant was backing away in its reasonable suspicion calculus in this case. Rather, for the reasons stated below, we conclude that the findings pertaining to the behavior of Defendant and his companion
 
 prior to
 
 Defendant backing away were sufficient to give rise to reasonable suspicion.
 
 See
 

 State v. Mello
 
 ,
 
 200 N.C. App. 437
 
 , 446-47,
 
 684 S.E.2d 483
 
 , 490 (2009),
 
 aff'd per curiam
 
 ,
 
 364 N.C. 421
 
 , 421,
 
 700 S.E.2d 224
 
 , 225 (2010) (holding that erratic behavior and flight exhibited
 
 by the defendant's companions
 
 could be used in the reasonable suspicion calculus). Specifically, the trial court found that Defendant was out at an unusual hour in deteriorating weather.
 
 See
 

 State v. Rinck
 
 ,
 
 303 N.C. 551
 
 , 560,
 
 280 S.E.2d 912
 
 , 920 (1981) ("It must be remembered that defendants were walking along the road at an unusual hour for persons to be going about their business.");
 
 State v. Eaton
 
 ,
 
 210 N.C. App 142
 
 , 145,
 
 707 S.E.2d 642
 
 , 645 (2011) (considering bad weather conditions as a factor for reasonable suspicion). The trial court found that Defendant was present in an area where a spree of crime had occurred.
 
 State v. Tillett
 
 ,
 
 50 N.C. App. 520
 
 , 524,
 
 274 S.E.2d 361
 
 , 364 (1981) ;
 
 see also
 

 State v. Thompson
 
 ,
 
 296 N.C. 703
 
 , 707,
 
 252 S.E.2d 776
 
 , 779 (1979). The trial court found that Defendant's companion lied about his name and that they both gave vague answers about where they were coming from.
 
 State v. Williams
 
 ,
 
 366 N.C. 110
 
 , 117,
 
 726 S.E.2d 161
 
 , 167 (2012) (considering vague answers about travel as factors in the reasonable suspicion calculus). And the trial court found that Defendant's companion ran away as he was being searched.
 
 See
 

 State v. Mitchell
 
 ,
 
 358 N.C. 63
 
 , 69,
 
 592 S.E.2d 543
 
 , 547 (2004) (quoting
 
 Wardlow
 
 ,
 
 528 U.S. at 125
 
 ,
 
 120 S.Ct. 673
 
 , for the proposition that headlong flight is the "consummate act of evasion" and is "certainly suggestive" of wrongdoing).
 

 We conclude that there was sufficient evidence at the suppression hearing to support the above findings and that these findings, when taken together, support the trial court's conclusion that the officer had reasonable suspicion to seize Defendant. We, therefore, conclude that the trial judge did not err in denying Defendant's motion to suppress.
 

 AFFIRMED.
 

 Chief Judge MCGEE and Judge INMAN concur.
 

 [1]
 

 The officer met Defendant on a prior occasion. The officer noted at the suppression hearing that he knew Defendant, and was aware that Defendant lived roughly twenty (20) blocks from the location of the encounter.