STATE OF NORTH CAROLINA v. RUSSELL ANTOINE COOPER, DEFENDANT

No. COA06-1356

(Filed 18 September 2007)

**Search and Seizure— frisk of black male—mere generalized suspicion**

The trial court erred by denying defendant's motion to suppress evidence from a frisk which led to a conviction for aiding and abetting an armed robbery of a convenience store. It cannot be concluded, under all the circumstances, that the officer had more than a hunch or generalized suspicion; upholding the decision below would be holding, in effect, that the police could stop any black male found within a quarter of a mile of a robbery in the time immediately after a robbery committed by a black male.

Appeal by defendant from judgment entered 8 December 2005 by Judge Donald M. Jacobs in Wake County Superior Court. Heard in the Court of Appeals 9 May 2007.

*Attorney General Roy Cooper, by Assistant Attorney General David L. Elliott, for the State.*

*Brannon Strickland, PLLC, by Anthony M. Brannon, for defendant-appellant.*

STATE v. COOPER

[186 N.C. App. 100 (2007)]

GEER, Judge.

Defendant Russell Antoine Cooper appeals from his conviction of robbery with a firearm. His sole argument on appeal is that the trial court erred in denying his motion to suppress evidence seized from his person during a warrantless search. Defendant was stopped and frisked by a Raleigh police officer shortly after an armed robbery at a nearby convenience store. Defendant contends that the officer lacked reasonable articulable suspicion of criminal activity, and, therefore, the stop and frisk did not fall within *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

More specifically, defendant asserts: "A black man walking in the vicinity of a store robbery is not suspicious behavior, without something else." Because we agree that the totality of the circumstances known to the officer could, at best, only give rise to a generalized suspicion of criminal activity, the stop and frisk in this case was not justified by *Terry*. Accordingly, we hold that the trial court erred in denying the motion to suppress.

## Standard of Review

In reviewing the denial of a motion to suppress, we determine whether the trial court's findings of fact are supported by competent evidence and whether those findings in turn support the trial court's conclusions of law. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Findings of fact are "conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Eason*, 336 N.C. 730, 745, 445 S.E.2d 917, 926 (1994), *cert. denied*, 513 U.S. 1096, 130 L. Ed. 2d 661, 115 S. Ct. 764 (1995). Defendant, in this case, does not challenge the findings of fact on appeal, and they are, therefore, binding. *State v. Carter*, 184 N.C. App. 706, 711, 646 S.E.2d 846, 850 (2007) ("Here, defendant has not assigned error to any of the findings of fact in the trial court's ruling, and, consequently, those findings are binding on appeal.").

## Facts

The trial court made the following findings of fact following the suppression hearing. In the late afternoon on 17 April 2005, Officer A.B. Smith, a Raleigh police officer, was traveling south on Capital Boulevard when he heard a report over his radio that an armed robbery had taken place at a convenience store in Mini City. The robber was described as a black male. Officer Smith also heard

over his radio that another officer had seen a black male walking on Lake Ridge Drive shortly after the robbery.

Officer Smith turned onto Deanna Drive to begin a sweep of the area in hopes of locating an individual meeting the description of the robber. The robber had reportedly left the rear of the store, heading in the general direction of the area that Officer Smith was searching. The officer knew that there was a path running approximately from the store through woods to Lake Ridge Drive. Officer Smith approached the intersection of Deanna Drive and Lake Ridge Drive approximately five minutes after the robbery.

At that time, Officer Smith saw a black male near where the path exited onto Lake Ridge Drive. From the time Officer Smith turned off Capital Boulevard until this point, the officer had seen no one else. He drove close to the black male—who was defendant—and motioned to him to approach the car. In response, defendant walked over to the car. For the purpose of obtaining information relating to the robbery, Officer Smith asked defendant to place his hands on the top of the patrol car. After defendant did so, Officer Smith began to frisk defendant and found a concealed handgun. He then arrested defendant for carrying a concealed weapon. The frisk took place five to 10 minutes after the robbery and a quarter of a mile away from the location of the robbery.

Although the trial court made no further findings of fact, the State's evidence tended to show the following. After arresting defendant, Officer Smith took defendant to the Mini City convenience store for a "show up." The cashier did not recognize defendant as the robber. Following the "show up," defendant was taken to the Raleigh Police Department's District 23 Substation for questioning. Defendant ultimately confessed that he had met Markell Baltimore in the woods and lent Baltimore his gun to commit the Mini City convenience store robbery. After Baltimore robbed the store, he again met defendant in the woods. Baltimore returned the gun to defendant and gave him some of the money he robbed from the store.

On 2 May 2005, defendant was indicted with aiding and abetting Baltimore's armed robbery. Defendant was tried on 5 December 2005 in Wake County Superior Court. During the trial, defendant moved to suppress evidence seized from his person during the stop and frisk at the intersection of Lake Ridge Drive and Deanna Drive. The trial court denied defendant's motion, concluding that Officer Smith stopped defendant "based on articulable, reasonable[] suspicion" and

that the frisk occurred for the officer's safety. The jury found defendant guilty, and the trial court sentenced him to a presumptive range term of 57 to 78 months imprisonment. Defendant timely appealed to this Court.

## Discussion

Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress. Since defendant does not challenge the trial court's findings of fact, the question before this Court is whether those findings support the trial court's conclusion that Officer Smith had a reasonable articulable suspicion sufficient to justify an investigatory stop and frisk under *Terry*.

As this Court recently stated, *Terry* established that "[a] police officer may effect a brief investigatory seizure of an individual where the officer has reasonable, articulable suspicion that a crime may be underway." *State v. Barnard*, 184 N.C. App. 25, 29, 645 S.E.2d 780, 783 (2007). Whether an officer had sufficient reasonable suspicion to make an investigatory stop is determined based on the totality of the circumstances. *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994). In conducting this review, we must bear in mind that:

> [t]he stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. The only requirement is a minimal level of objective justification, something more than an "unparticularized suspicion or hunch."

*Id.* at 441-42, 446 S.E.2d at 70 (internal citations omitted) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585 (1989)).

We note that neither defendant's brief nor the State's brief are particularly helpful since both cite only to cases involving generalized discussions of the standards rather than to cases applying those standards to circumstances similar to those involved in this case. We start our discussion with *State v. Fleming*, 106 N.C. App. 165, 415 S.E.2d 782 (1992), frequently cited by defendants because this Court concluded, in that case, that the officer lacked reasonable articulable suspicion.

In *Fleming*, this Court addressed a stop and frisk that occurred at 12:10 a.m. in an area in which drugs were sold on a daily basis.

During the frisk, the defendant was found to have crack cocaine on his person. This Court set out the following pertinent circumstances:

> In the case now before us, at the time Officer Williams first observed defendant and his companion, they were merely standing in an open area between two apartment buildings. At this point, they were just watching the group of officers standing on the street and talking. The officer observed no overt act by defendant at this time nor any contact between defendant and his companion. Next, the officer observed the two men *walk* between two buildings, out of the open area, toward Rugby Street and then begin *walking* down the public sidewalk in front of the apartments.

*Id.* at 170, 415 S.E.2d at 785. The Court concluded, based on these facts, that the officer who stopped and searched the defendant "had only a generalized suspicion that the defendant was engaged in criminal activity, based upon the time, place, and the officer's knowledge that defendant was unfamiliar to the area." *Id.* at 171, 415 S.E.2d at 785.

The Court further observed:

> Should these factors be found sufficient to justify the seizure of this defendant, such factors could obviously justify the seizure of innocent citizens unfamiliar to the observing officer, who, late at night, happen to be seen standing in an open area of a housing project or walking down a public sidewalk in a "high drug area." This would not be reasonable.

*Id.*, 415 S.E.2d at 785-86. The Court, therefore, concluded:

> Considering the facts relied upon by the officer, together with the rational inferences which the officer was entitled to draw therefrom, we conclude they were inadequate to support the trial court's conclusion that Officer Williams had a reasonable articulable suspicion that defendant was engaged in criminal activity. *Were we to conclude otherwise, we would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches which the Fourth Amendment is specifically designed to protect against.*

*Id.*, 415 S.E.2d at 786 (emphasis added).

This Court subsequently relied upon *Fleming* in *State v. Rhyne*, 124 N.C. App. 84, 478 S.E.2d 789 (1996), in which a *Terry* search had

also revealed drugs in the defendant's possession. In *Rhyne*, however, officers had actually received "an anonymous tip that several men were dealing drugs in the breezeway in which the defendant was sitting." *Id.* at 90, 478 S.E.2d at 792. When officers arrived at the location, they found the defendant sitting on the steps of the breezeway, which officers knew was outside his apartment building; he did not leave, but rather cooperated generally with the officers. *Id.* The Court observed that "[o]ther than being nervous, [the defendant] exhibited no other behavior that would indicate that he was engaged in criminal activity." *Id.*

Although this Court acknowledged that the anonymous tip distinguished *Fleming*, this Court concluded:

> In light of the totality of circumstances, we conclude that this pat-down search was not justified. The anonymous tip referred simply to several black men located in the apartment complex breezeway; it was not specific to defendant. Furthermore, although defendant was in an area known for drug activity, this area was also his residence, a fact known to the officer prior to the search. When questioned, defendant was cooperative and did not flee the scene. He was wearing a jersey and shorts neither of which could easily conceal a weapon. In fact, when asked if he had a weapon, defendant lifted his shirt to show that he did not. Defendant also did not make any sudden or suspicious gestures which would suggest that he had a weapon.

*Id.* at 90-91, 478 S.E.2d at 793. The Court, therefore, concluded that "[t]his pat-down search was an unreasonable intrusion upon defendant's Fourth Amendment right to personal security and privacy," and "[t]he trial court erred in denying defendant's motion to suppress the evidence thereby obtained." *Id.* at 91, 478 S.E.2d at 793.

Most recently, this Court found *Fleming* analogous in *In re J.L.B.M.*, 176 N.C. App. 613, 627 S.E.2d 239 (2006). In *J.L.B.M.*, a dispatch reported a "suspicious person described as a Hispanic male." *Id.* at 620, 627 S.E.2d at 244. The description included no information regarding age, height, weight, other physical characteristics, or clothing. *Id.* The officer, who stopped and frisked the juvenile, "did not observe the juvenile committing any criminal acts, nor had there been other reports of any criminal activity in the area that day." *Id.* at 621, 627 S.E.2d at 244. In addition, the juvenile was stopped at approximately 6:00 p.m. on a summer evening in front of an open business. *Id.*

The Court reasoned: "Even viewed through the eyes of a reasonable, cautious officer, the facts relied on by Officer Henderson are inadequate to show more than an unparticularized suspicion or hunch that the juvenile was involved in criminal activity." *Id.* at 621-22, 627 S.E.2d at 245 (internal citation omitted). The Court stated further:

> We hold that in the present case, like in *Fleming*, the stop was unjustified. Officer Henderson relied solely on the dispatch that there was a suspicious person at the Exxon gas station, that the juvenile matched the "Hispanic male" description of the suspicious person, that the juvenile was wearing baggy clothes, and that the juvenile chose to walk away from the patrol car. Officer Henderson was not aware of any graffiti or property damage before he stopped the juvenile, and he testified that he noticed the bulge in the juvenile's pocket after he stopped the juvenile.

*Id.* at 622, 627 S.E.2d at 245. As a result, the Court held that the trial court erred in denying the juvenile's motion to suppress. *Id.*

As *J.L.B.M.* suggested, some cases have found reasonable articulable suspicion for a stop and frisk when there was a report that a crime occurred nearby and circumstances relating to the defendant matched the report. In *State v. Thompson*, 296 N.C. 703, 707, 252 S.E.2d 776, 779, *cert. denied*, 444 U.S. 907, 62 L. Ed. 2d 143, 100 S. Ct. 220 (1979), our Supreme Court held that circumstances supporting reasonable suspicion for an investigatory stop of a van included the officers' knowledge of recent break-ins in the vicinity involving a van; the van's being parked at 12:30 a.m. in a public parking area in an isolated part of New Hanover County; and the occupants' engaging in considerable activity around the van. Similarly, in *State v. Williams*, 87 N.C. App. 261, 264, 360 S.E.2d 500, 502 (1987), this Court affirmed the denial of a motion to suppress when (1) officers received a report of a burglary involving four black males; (2) 20 minutes after the burglary, they spotted a car containing four black males within 200 to 400 yards of the site of the burglary; and (3) some of the stolen property had been found in a field between the burglarized home and the car's location. *See also In re Whitley*, 122 N.C. App. 290, 292, 468 S.E.2d 610, 612 (reasonable suspicion existed when police received telephone call reporting that two black males were selling drugs on Merrick Street, police found defendant and another black male at that location, and defendant exhibited "nervous body reflexes"), *disc. review denied*, 344 N.C. 437, 476 S.E.2d 132 (1996).

Although, in this case, Officer Smith had received a report of an armed robbery about a quarter of a mile away, we believe this case more closely resembles *Fleming, Rhyne,* and *J.B.L.M.* than *Thompson, Williams,* and *Whitley.* Indeed, this case is materially indistinguishable from *Rhyne.*

The report indicated only that a black male had committed the armed robbery—a description that fits a substantial percentage of our population. There was no further description as to age, physical characteristics, or clothing. In contrast, in *Williams,* the report specified four black males, while in *Whitley,* the call had referred to two black males at a particular location.

In this case, defendant was simply walking down a public street in April at 6:30 p.m. Officer Smith did not observe defendant engaging in any suspicious behavior or mannerisms, and defendant cooperated fully. Moreover, defendant did not appear nervous when approached by Officer Smith. In *Thompson, Williams,* and *Whitley,* the parties were stopped late at night. In *Thompson,* the van was in a suspicious location and the parties were engaged in suspicious behavior. In *Whitley,* the defendant was obviously nervous.

The State relies significantly on the fact that there was a path in defendant's vicinity that led to the area near the convenience store. Officer Smith, however, had no information suggesting that defendant had been on that path or any facts that could be construed as indicating defendant was coming from that path. Further, Officer Smith could not even say that the robber had fled the store in the general direction of the path. By way of contrast, in *Williams,* before stopping the four men, officers had found some of the stolen goods in a field that lay directly between the robbed house and where the men were found in their car.

In this case, we cannot conclude, under all the circumstances, that Officer Smith had more than a hunch or a generalized suspicion. If we were to uphold the decision below, then we would, in effect, be holding that police, in the time frame immediately following a robbery committed by a black male, could stop any black male found within a quarter of a mile of the robbery. As this Court stated in *Fleming,* "[t]his would not be reasonable." 106 N.C. App. at 171, 415 S.E.2d at 786.

We, therefore, hold that the trial court erred in denying defendant's motion to suppress the evidence obtained from his person dur-

ing the *Terry* frisk. Although defendant recites the law regarding the fruit of the poisonous tree, *see State v. Pope*, 333 N.C. 106, 113-14, 423 S.E.2d 740, 744 (1992), he does not specifically apply that doctrine to this case, but instead asks the Court to "vacate the judgment against Mr. Cooper, reverse the trial court's order denying the motion to suppress, and remand to the trial court with instructions to grant the motion to suppress and for further proceedings." We, therefore, do not address whether the "fruit of the poisonous tree" doctrine requires dismissal of the charge against defendant. We reverse the judgment below and remand for further proceedings.

Reversed and remanded.

Judges HUNTER and ELMORE concur.