STATE OF NORTH CAROLINA v. DEMETRIUS MIGUEL WILLIAMS, Defendant

No. COA08-314

(Filed 3 March 2009)

**1. Search and Seizure— stop and frisk—reasonable articulable suspicion**

The trial court properly determined that an officer had reasonable articulable suspicion to stop and frisk defendant (which led to a drugs arrest) where the officer arrived in the vicinity of an armed robbery minutes after the robber had fled in the direction traveled by defendant, defendant matched the corrected description of the robber, he was found within a few blocks of the robbery minutes after it occurred, he was traveling in the same direction as the robber, he froze when confronted, and he initially refused to take his hands out of his pockets when asked by the officer.

**2. Search and Seizure— seizure of drugs after stop and frisk—probable cause standard required—remand**

A motion to suppress was remanded for determination under the correct standard where the trial court concluded that an officer seized crack cocaine from defendant based on reasonable suspicion after a stop and frisk. The trial court should have determined whether the officer had probable cause to make the seizure under the plain feel doctrine; where the trial court mistakenly applies the incorrect standard in determining a constitutional violation for purposes of a motion to suppress, the appellate court must remand for a determination under the proper standard.

Appeal by defendant from judgment entered 10 September 2007 by Judge Dennis J. Winner in Henderson County Superior Court. Heard in the Court of Appeals 11 September 2008.

*Attorney General Roy Cooper, by Special Deputy Attorney General Douglas A. Johnston, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Kristen L. Todd, for defendant-appellant.*

GEER, Judge.

Defendant Demetrius Miguel Williams, after having his motion to suppress denied, pled guilty to possession with the intent to sell or deliver cocaine, possession of marijuana, possession of drug paraphernalia, and having attained habitual felon status. Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress. Although we hold that the arresting officer had reasonable articulable suspicion to stop and frisk defendant under *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), we conclude that the trial court did not apply the correct legal standard in determining whether the officer's seizure of contraband during the frisk was constitutional under the plain feel doctrine. We, therefore, reverse and remand for further proceedings.

---

Appellate review of the denial of a motion to suppress is " 'limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law.' " *State v. Barden*, 356 N.C. 316, 340, 572 S.E.2d 108, 125 (2002) (quoting *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)), *cert. denied*, 538 U.S. 1040, 155 L. Ed. 2d 1074, 123 S. Ct. 2087 (2003). The trial court's conclusions of law are, however, "fully reviewable on appeal." *State v. Campbell*, 359 N.C. 644, 662, 617 S.E.2d 1, 13 (2005), *cert. denied*, 547 U.S. 1073, 164 L. Ed. 2d 523, 126 S. Ct. 1773 (2006).

As a preliminary matter, we note that the trial court announced its decision from the bench, but apparently did not subsequently enter a written order memorializing its ruling on defendant's motion to suppress. N.C. Gen. Stat. § 15A-977(f) (2007) states that "[t]he [trial] judge must set forth in the record his findings of facts and conclusions of law." This statute has been interpreted as mandating a written order unless (1) the trial court provides its rationale from the bench, and (2) there are no material conflicts in the evidence at the suppression hearing. *State v. Shelly*, 181 N.C. App. 196, 205, 638 S.E.2d 516, 523, *disc. review denied*, 361 N.C. 367, 646 S.E.2d 768 (2007). If these two criteria are met, the necessary findings of fact are implied from the denial of the motion to suppress. *Id.*

In this case, the trial court provided its rationale from the bench, and there were no material conflicts in the evidence. Only Officer Nathan Smith of the Hendersonville Police Department testified;

defendant presented no evidence. We, therefore, infer that the trial court made the findings necessary to support the denial of the motion to suppress. The issue is, therefore, whether the undisputed evidence supports the denial of the motion to suppress.

Officer Smith's testimony at the suppression hearing tended to establish the following facts. On 17 January 2006, sometime around 1:00 p.m., he was on patrol when he heard over the radio that an armed robbery had just occurred at a local Hispanic store. Due to the language barrier between the victims and the police, there were two conflicting BOLO ("be on the lookout for") descriptions of the perpetrator. The first described the perpetrator as a white male wearing a hood and gloves and carrying a silver firearm. In the second BOLO, the perpetrator was described as an African-American male about six feet tall with a medium build, who was wearing a green hooded jacket with gloves and some type of mask, and who was armed with a silver gun.

Just minutes after the robbery, Officer Smith spotted defendant— who is African-American and approximately six feet tall with a medium build—a block or two from the location of the robbery, walking in the same direction that the suspect was reportedly traveling, although he was also walking down the middle of the street blocking traffic. Defendant was wearing a "blue-green" jacket made of a material that changed colors. He had his hands in his pockets, had his hood up, and was wearing shooting glasses that wrapped around his face.

Officer Smith stopped his patrol car, radioed for backup, and approached defendant, asking him to take his hands out of his pockets. At this point, defendant "locked up," stopped walking, kept his hands in his pockets, and did not say anything. Based on defendant's response, Officer Smith became concerned that defendant was the armed robbery suspect and that he might be concealing a firearm in his pockets. Officer Smith drew his firearm and ordered defendant several more times to take his hands out of his pockets.

After Officer Smith "very strong[ly]" ordered defendant to show his hands, defendant took out his hands but also started to empty out his pockets. According to Officer Smith, as defendant was emptying his pockets, defendant exposed the top of a plastic baggie in one of his front pockets. The officer took hold of defendant's arm, put defendant's hand on top of the vehicle, and holstered his gun. When Officer Smith frisked defendant, he patted defendant's front pocket

**STATE v. WILLIAMS**

[195 N.C. App. 554 (2009)]

and felt something hard to the touch, round, and possibly a quarter of an inch thick. Based on its feel, Officer Smith believed the object to be a "crack cookie." Officer Smith then pulled the baggie out of defendant's pocket—the baggie contained an off-white "big crack cookie" and smaller pieces of what appeared to be crack cocaine.

Officer Smith arrested defendant for possession of cocaine and conducted a search incident to arrest during which he found a small pipe packed with less than half an ounce of marijuana. The "cookie" was sent to the SBI for testing and was identified as 19.5 grams of crack cocaine.

Defendant was indicted for possession of marijuana in an amount up to 1.2 ounces, possession with the intent to sell or deliver cocaine, possession of drug paraphernalia, and having attained habitual felon status. Defendant moved to suppress the drugs and drug paraphernalia on the ground that they had been seized in violation of his Fourth Amendment rights. The trial court denied the motion to suppress, orally concluding that the officer had reasonable articulable suspicion to stop defendant and upholding the seizure of the drugs under the plain feel doctrine. Reserving the right to appeal from the denial of his motion to suppress, defendant pled guilty to each of the charges and having attained habitual felon status. At sentencing, the State stipulated to and the trial court found the mitigating factor that defendant had accepted responsibility for his criminal conduct at an early stage. The court then consolidated the four charges into one judgment and sentenced defendant to a mitigated sentence of 80 to 105 months imprisonment. Defendant timely appealed to this Court.[1]

### Investigatory Stop

[1] Defendant first argues that Officer Smith did not have reasonable articulable suspicion to justify the investigatory stop, and thus the trial court erred in denying his motion to suppress. "A police officer may effect a brief investigatory seizure of an individual where the officer has reasonable, articulable suspicion that a crime may be underway." *State v. Barnard*, 184 N.C. App. 25, 29, 645 S.E.2d 780, 783 (2007), *aff'd*, 362 N.C. 244, 658 S.E.2d 643, *cert. denied*, —— U.S. ——, 172 L. Ed. 2d 198, 129 S. Ct. 264 (2008). Reasonable articulable suspi-

---

1. We note that, pursuant to a motion to amend the record on appeal, defendant's appellate counsel wrote in by hand amendments to defendant's assignments of error. Because these handwritten additions can be difficult to read, the better practice would have been to retype and submit corrected assignments of error.

cion requires that "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Watkins,* 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citing *Terry,* 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880)).

Reasonable articulable suspicion "only require[s] . . . a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.' " *Id.* at 442, 446 S.E.2d at 70 (quoting *United States v. Sokolow,* 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585 (1989)). "A court must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion to make an investigatory stop exists." *Id.* at 441, 446 S.E.2d at 70 (quoting *United States v. Cortez,* 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629, 101 S. Ct. 690, 695 (1981)).

Considering the "whole picture," the evidence presented at the suppression hearing establishes that the officer had reasonable articulable suspicion to conduct an investigatory stop of defendant. Officer Smith reached the vicinity of the armed robbery just minutes after the robber had fled in the direction traveled by defendant. At the time he first saw defendant, Officer Smith had received the second BOLO describing the suspect as an African-American male about six feet tall with a medium build, armed with a silver gun, and wearing a green jacket with a hood, gloves, and some type of mask. Officer Smith described defendant as being roughly six feet tall with a medium build and wearing a "blue-green" hooded jacket that changed colors. Defendant was also wearing large glasses which covered much of his face. With his hands in his pockets, Officer Smith was unable to confirm whether defendant was wearing gloves or carrying a silver gun. When, however, Officer Smith stopped defendant and asked him to show his hands to see if he was in fact wearing gloves, defendant "locked up" and initially refused to take his hands out of his pockets. Viewed as a whole, these facts and the reasonable inferences flowing from them support the trial court's conclusion that Officer Smith had reasonable articulable suspicion that defendant was the perpetrator of the robbery.

Relying predominately on *State v. Cooper,* 186 N.C. App. 100, 103, 649 S.E.2d 664, 666 (2007), *disc. review denied,* 362 N.C. 476, 666 S.E.2d 761 (2008), and the cases cited in *Cooper,* defendant argues that the officer lacked reasonable articulable suspicion because the officer had received two "drastically" different descriptions of the

armed robbery suspect, with defendant matching neither description. In *Cooper*, this Court held that the officer lacked reasonable suspicion because, beyond describing the suspect as an African-American male, the BOLO provided "no further description as to age, physical characteristics, or clothing" of the suspect. *Id.* at 107, 649 S.E.2d at 668. The officer in *Cooper* stopped the defendant solely because he was a black male within a quarter of a mile of where a robbery by a black male had occurred. *Id.*

Here, by contrast, the corrected BOLO provided specific details about the robber apart from race that matched defendant: his height and build, his clothing, and the direction in which the robber was traveling. *See State v. Lovin*, 339 N.C. 695, 704, 454 S.E.2d 229, 234 (1995) (stating officer had reasonable articulable suspicion to conduct *Terry* stop in part because defendant's appearance—a man with long brown hair, wearing a gold watch—substantially matched the description given of a male with a "lot of hair," wearing a gold watch and large frame glasses). Moreover, there is no requirement that the individual stopped must match precisely the description of the suspect. *See State v. Buie*, 297 N.C. 159, 162, 254 S.E.2d 26, 28 (finding reasonable articulable suspicion when defendant only "roughly matched the description of the suspect"), *cert. denied*, 444 U.S. 971, 62 L. Ed. 2d 386, 100 S. Ct. 464 (1979).

Defendant, however, appears to be arguing that if conflicting BOLOs are issued, an officer relying on the most recent BOLO cannot, given the discrepancy, have reasonable articulable suspicion. Defendant cites no authority for this proposition, and we know of none. Even though an officer's reliance on a prior, inaccurate BOLO might raise Fourth Amendment concerns, in this case, the officer was relying on the corrected BOLO.

Defendant also argues, however, that, like the defendant in *Cooper*, he was not engaged in any suspicious activity when Officer Smith first saw him and did not act nervously or threateningly during his interaction with Officer Smith, but rather fully cooperated. This argument disregards the requirement that we look at the "whole picture" or the "totality of the circumstances." Because defendant substantially matched the description in the corrected BOLO, was found a few blocks from the robbery only minutes after it occurred, was traveling in the same direction as the robber, froze when confronted, and refused initially to remove his hands from his pockets, we hold that the trial court properly determined that the officer had reasonable articulable suspicion to stop defendant and frisk him. *See, e.g.,*

*State v. Rinck*, 303 N.C. 551, 560, 280 S.E.2d 912, 920 (1981) (upholding trial court's determination that officer had reasonable articulable suspicion to conduct *Terry* stop where officer spotted defendants walking down street within a few hundred feet of where homicide occurred within past half hour); *In re Whitley*, 122 N.C. App. 290, 292, 468 S.E.2d 610, 612 (1996) (concluding officer had reasonable articulable suspicion when officer had to repeatedly ask juvenile to spread his legs to be frisked and juvenile had "nervous body reflexes"), *disc. review denied*, 344 N.C. 437, 476 S.E.2d 132 (1996); *State v. Cornelius*, 104 N.C. App. 583, 588, 410 S.E.2d 504, 508 (1991) (holding that officer had reasonable suspicion to justify investigatory stop of automobile when officer received dispatch that black male in black BMW with temporary license tag was selling controlled substances, and officer observed person in automobile fitting that description less than one minute later), *disc. review denied*, 331 N.C. 119, 414 S.E.2d 762 (1992).

## Plain Feel Doctrine

**[2]** Defendant next contends that even if he was properly stopped, the trial court applied the wrong legal standard under the plain feel doctrine in determining whether the officer was justified in seizing the "crack cookie" from defendant's pocket. Defendant asserts that "an officer must have probable cause sufficient to warrant a belief that the object may be contraband drugs." We agree.

According to the plain feel doctrine, when conducting a *Terry* frisk, "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons . . . ." *Minnesota v. Dickerson*, 508 U.S. 366, 375, 124 L. Ed. 2d 334, 346, 113 S. Ct. 2130, 2137 (1993). The Supreme Court has, however, explicitly limited this doctrine to when the officer has probable cause to believe the object is contraband, explaining that "the Fourth Amendment's requirement that the officer have *probable cause* to believe that the item is contraband before seizing it ensures against excessively speculative seizures." *Id.* at 376, 124 L. Ed. 2d at 347, 113 S. Ct. at 2137 (emphasis added). *See also State v. Shearin*, 170 N.C. App. 222, 226, 612 S.E.2d 371, 376 ("Evidence of contraband, plainly felt during a pat-down or frisk, may also be admissible, provided the officer had *probable cause* to believe that the item was in fact contraband." (emphasis added)), *appeal dismissed and disc.*

*review denied,* 360 N.C. 75, 624 S.E.2d 369 (2005); *State v. Briggs,* 140 N.C. App. 484, 489, 536 S.E.2d 858, 861 (2000) ("[I]f after feeling the object, the officer lacks probable cause to believe that the object is contraband without conducting some further search, the 'immediately apparent' requirement has not been met and the plain feel doctrine cannot justify the seizure of that object.").

Thus, in order for the seizure of the contraband in this case to be constitutional under the plain feel doctrine, the trial court was required to determine that the officer had probable cause—not reasonable suspicion—to believe that the item felt in defendant's pocket was contraband. When, however, the trial court made its oral denial of the motion to suppress, it stated that "the officer had a *reasonable suspicion* that the defendant might be carrying contraband drugs." The trial court's statement suggests that the court improperly applied the reasonable articulable suspicion standard rather than probable cause in determining whether the seizure of the contraband drugs was justified under the Fourth Amendment.

Our Supreme Court has stated that when reviewing a trial court's ruling on a motion to suppress, " '[t]he trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found.' " *State v. Buchanan,* 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (quoting *State v. Golphin,* 352 N.C. 364, 409, 533 S.E.2d 168, 201 (2000), *cert. denied,* 532 U.S. 931, 149 L. Ed. 2d 305, 121 S. Ct. 1379-80 (2001)). Where, as here, the trial court mistakenly applies an incorrect legal standard in determining whether a defendant's constitutional rights have been violated for purposes of a motion to suppress, the appellate court must remand the matter to the trial court for a "redetermination" under the proper standard. *Id.* at 339-40, 543 S.E.2d at 828. Accordingly, we reverse the portion of the trial court's denial of the motion to suppress concluding that the officer properly seized the crack cocaine cookie and remand for a determination whether the officer had probable cause to make that seizure under the plain feel doctrine.

Reversed and remanded.

Judges STEELMAN and STEPHENS concur.