STATE OF NORTH CAROLINA
v.
DONALD PAUL TRAUB.
No. COA08-1464.
Court of Appeals of North Carolina.
Filed July 7, 2009.
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Tamara Zmuda, for the State.
Hedrick Kepley, PLLC, by Michael P. Kepley and Jeffery M. Hedrick, for defendant-appellant.
BRYANT, Judge.
Donald Paul Traub ("defendant") appeals from judgments dated 5 August 2008 and entered pursuant to his entry of a guilty plea to charges of driving while impaired and driving while license revoked.

Facts
On 14 October 2006, between 8:30 and 9:00 p.m., Lindsey Alman called 911 to report a hit-and-run accident that occurred in the parking lot of her apartment complex in Boone, North Carolina. Miss Alman told the 911 operator that she had just seen a 1998 or 1999 white, two-door Chevrolet Tahoe back up in the parking lot and hit another car, damaging the car's door. Miss Alman reported the Tahoe was driven by a male and that there was a dog in the back of the vehicle. Ken Alman, Miss Alman's father, got into his own vehicle and followed after the Tahoe. Upon catching up with the Tahoe, Mr. Alman called his daughter and gave her the license plate number of the Tahoe and their location, which Miss Alman relayed to the 911 operator. Shortly thereafter, a police car came up behind Mr. Alman, passed him, and stopped the Tahoe.
That same evening, while on patrol, Sergeant Randy Brown of the Boone Police Department received a dispatch over his radio to be on the lookout for a white, full-size, 1998 Chevrolet Tahoe with a North Carolina registration, which was suspected of being involved in a hit-and-run accident. Sergeant Brown headed toward the area where the dispatch indicated the Tahoe was headed and shortly thereafter, he observed a Tahoe generally matching the description from the call. Sergeant Brown stopped the Tahoe and found the only occupants of the vehicle were defendant and a German Shepard dog. While conversing with defendant, Sergeant Brown noticed an odor of alcohol on defendant's breath.
Shortly into Sergeant Brown's stop of the Tahoe, Trooper David Searcy of the North Carolina Highway Patrol arrived and took over the stop. Trooper Searcy also observed that defendant had a strong odor of alcohol on his breath and that defendant's eyes were "red, glassy and bloodshot." Trooper Searcy asked defendant to get out of the Tahoe and administered an alka-sensor test, and roadside sobriety tests. Based on the results of the tests, and further observations of defendant, Trooper Searcy placed defendant under arrest for driving while impaired and driving while license revoked.
On 17 December 2007, defendant entered a guilty plea to both charges in district court and the court entered judgment against defendant. Defendant filed notice of appeal to the superior court for a trial de novo. On 5 August 2008, defendant filed a motion to suppress evidence and dismiss the charges against him. The superior court heard defendant's motion prior to trial and rendered its ruling denying defendant's motion in open court.
Subsequent to the denial of his motion, defendant entered a guilty plea to both charges, reserving his right to appeal the denial of his motion. The trial court entered judgments pursuant to defendant's guilty plea and, for the conviction of driving while impaired, sentenced defendant to a suspended term of sixty days in jail, twenty-four months of unsupervised probation, twenty-four hours of community service, and ordered defendant to pay a total of $877.77 in costs, fees and fines. For the conviction of driving with license revoked, the trial court sentenced defendant to a consecutive suspended term of forty-five days in jail and twenty-four months of unsupervised probation. Defendant filed notice of appeal on 14 August 2008.
On appeal, defendant argues the trial court erred in denying his motion to suppress. Defendant contends the evidence submitted at the hearing and the trial court's findings were insufficient to justify the stop of the Tahoe, rendering the stop unconstitutional and requiring the suppression of evidence obtained as a result of the stop. We disagree.
Appellate review of the denial of a motion to suppress is "limited to determining whether the trial [court's] underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Barden, 356 N.C. 316, 340, 572 S.E.2d 108, 125 (2002) (citation and quotation omitted), cert. denied, 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003). The trial court's conclusions of law are, however, "fully reviewable on appeal." State v. Campbell, 359 N.C. 644, 662, 617 S.E.2d 1, 13 (2005), cert. denied, 547 U.S. 1073, 164 L. Ed. 2d 523 (2006).
"The Fourth Amendment [to the United States Constitution] protects individuals `against unreasonable searches and seizures,' U.S. Const. amend. IV, and the North Carolina Constitution provides similar protection, N.C. Const. art. I, § 20." State v. Styles, 362 N.C. 412, 414, 665 S.E.2d 438, 439 (2008). However,
The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, . . . it may be the essence of good police work to adopt an intermediate response.
State v. Jackson, 302 N.C. 101, 105, 273 S.E.2d 666, 670 (1981) (quoting Adams v. Williams, 407 U.S. 143, 145, 32 L. Ed. 2d 612, 616-17 (1972)).
It is well established that "[a] police officer may effect a brief investigatory seizure of an individual where the officer has reasonable, articulable suspicion that a crime may be underway." State v. Barnard, 184 N.C. App. 25, 29, 645 S.E.2d 780, 783 (2007), aff'd, 362 N.C. 244, 658 S.E.2d 643, cert. denied, 129 U.S. 264, 172 L. Ed. 2d 198 (2008); see also Styles, 362 N.C. at 415, 665 S.E.2d at 440 (holding that "reasonable suspicion is the necessary standard for traffic stops."). Reasonable articulable suspicion requires that "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." State v. Watkins, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citing Terry v. Ohio, 392 U.S. 1, 21-22, 20 L. Ed. 2d 889, 906 (1968)). Reasonable articulable suspicion "only require[s] . . . a minimal level of objective justification, something more than an `unparticularized suspicion or hunch.'" Id. at 442, 446 S.E.2d at 70 (quoting United States v. Sokolow, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)). "A court must consider `the totality of the circumstances  the whole picture' in determining whether a reasonable suspicion to make an investigatory stop exists." Id. at 441, 446 S.E.2d at 70 (quoting United States v. Cortez, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981)).
Notwithstanding defendant's narrow interpretation of this Court's opinion in State v. Battle, 109 N.C. App. 367, 371, 427 S.E.2d 156, 159 (1993) (holding an investigatory stop by an officer is constitutional only if: "(1) the officer making the stop has a reasonable suspicion, based on his personal observations, that criminal conduct has occurred, is occurring, or is about to occur; (2) the officer making the stop has received a request to stop the defendant from another officer, if that other officer had, prior to the issuance of the request, the necessary reasonable suspicion; [or] (3) the officer making the stop received, prior to the stop, information from another officer, which, when combined with the observations made by the stopping officer, constitute the necessary reasonable suspicion."), North Carolina Courts have found an officer's reasonable suspicion to conduct an investigatory stop may be based upon information provided by an informant where there are sufficient indicia of reliability to support the information. See State v. Maready, 362 N.C. 614, 619, 669 S.E.2d 564, 567 (2008) (holding sufficient indicia of reliability of the information provided by an informant and other attendant circumstances may support a reasonable suspicion required to support the investigative stop and that "[a]n informant's ability to provide a firsthand eyewitness report is one indicator of reliability.") Defendant's further reliance of this Court's opinions in State v. Cooper, 186 N.C. App. 100, 649 S.E.2d 664 (2007), and In re: J.L.B.M, 176 N.C. App. 613, 627 S.E.2d 239 (2006), is similarly misplaced.
In Cooper, an officer received a dispatch over his radio that a black male had committed an armed robbery at a convenience store. Cooper, 186 N.C. App. at 101-02, 649 S.E.2d at 665. Approximately five minutes after the robbery, the officer stopped the defendant at a point where a path from the convenience store opened onto a street. Id. at 102, 649 S.E.2d at 665-66. This Court held that the officer lacked reasonable suspicion to stop the defendant because, beyond describing the suspect as a black male, the dispatch provided "no further description as to age, physical characteristics, or clothing" of the suspect. Id. at 107, 649 S.E.2d at 668. The officer in Cooper stopped the defendant solely because he was a black male within a quarter of a mile of where a robbery by a black male had occurred. Id.
In J.L.B.M., an officer received a dispatch reporting a "suspicious person described as a Hispanic male." J.L.B.M., 176 N.C. App. at 620, 627 S.E.2d at 244. The description of the suspicious person included no information regarding age, height, weight, other physical characteristics, or clothing. Id. The officer who conducted the investigatory stop of the juvenile stopped the juvenile at approximately 6:00 p.m. in front of an open business and "did not observe the juvenile committing any criminal acts, nor had there been other reports of any criminal activity in the area that day." Id. at 621, 627 S.E.2d at 244. This Court concluded the trial court erred in denying the juvenile's motion to suppress evidence because the officer who made the investigatory stop had only a "generalized suspicion that the juvenile was engaged in criminal activity." Id. at 622, 627 S.E.2d at 245 (citation and quotations omitted).
In the instant case, we find there were sufficient indicia of reliability of Miss Alman's information, as communicated through the radio dispatch, and other attendant circumstances which satisfy the reasonable suspicion standard and justify Sergeant Brown's investigatory stop of defendant's Tahoe. Here, the trial court found: (1) Miss Alman saw a 1998 or 1999 white Tahoe back into a car in the parking lot of her apartment complex and drive away; (2) Miss Alman observed that the Tahoe was driven by a male and that there was a dog in the vehicle; (3) Miss Alman immediately phoned 911 and reported this information; (4) Mr. Alman followed after the Tahoe in his own vehicle; (5) Mr. Alman caught up with a Tahoe he believed was the one seen in the parking lot which contained a dog similar to that seen in the Tahoe in the parking lot; (6) Mr. Alman phoned his daughter and gave her the license tag number of the Tahoe; (7) Miss Alman relayed the license tag information to the 911 operator; (8) shortly thereafter, a police car passed Mr. Alman and stopped the Tahoe; (9) around the same time, Sergeant Brown received a radio dispatch advising officers to be on the lookout for a 1998 white Tahoe with a North Carolina registration in the vicinity of downtown Boone, North Carolina which was suspected of being involved in a hit-and-run accident; (10) Sergeant Brown headed to this area and observed a white Tahoe driving away from the area; (11) Sergeant Brown turned to follow the Tahoe, and stopped it shortly thereafter. These findings are supported by evidence presented at the evidentiary hearing and support the trial court's conclusion that Sergeant Brown had the reasonable suspicion necessary to conduct an investigatory stop of defendant's Tahoe. Accordingly, we affirm the trial court's denial of defendant's motion to suppress.
Affirmed.
Chief Judge MARTIN and Judge ELMORE concur.
Report per Rule 30(e).