HUNTER, JR. ROBERT N., Judge.
On 7 October 2013, a grand jury indicted Robert Lee Baker, Jr. ("Defendant") for first-degree burglary, carrying a concealed gun, communicating threats, robbery with a dangerous weapon, second-degree kidnapping, and impersonation of a law enforcement officer. A jury found Defendant guilty of felonious entering, carrying a concealed gun, communicating threats, robbery with a firearm, and second-degree kidnapping. Defendant argues the trial court improperly denied his motion to suppress and the trial court improperly listed a conviction for communicating threats on its judgment. We affirm in part and remand in part.
I. Factual and Procedural History
A grand jury indicted Defendant for first degree burglary, carrying a concealed gun, communicating threats, robbery with a dangerous weapon, second-degree kidnapping, and impersonating a law enforcement officer. The case came on for trial 27 May 2014. The evidence for the State tended to show the following set of facts.
Defendant approached Julie Adams, a high school teacher, outside her home between 5:00 and 7:00 p.m. Defendant asked her if she was by herself and whether men lived nearby. Defendant claimed he was a bail bondsman looking for a Hispanic man. Adams described the Defendant's clothing as dark-colored workout attire with a dark hat. Defendant drove a blue Ford Explorer with a gray bottom. Adams thought the encounter was "strange" and called the police.
At 8:30 on the same night, Maya Serveriano sat in his apartment located approximately¼ mile from Adams' house. It was hot inside, so he left his front door open. Defendant entered uninvited through the open door, and asked Serveriano if Benitez lived there. Serveriano told him no. Defendant then asked Serveriano for his identification. When Serveriano refused to show Defendant his identification, Defendant said "I'm police" and showed his pistol. Defendant took the pistol out and demanded money. Serveriano gave Defendant $70 to $75 and a jar of change. Then, Defendant ordered Serveriano to go into his bathroom and close the door. With Defendant pointing a gun at him, Serveriano went into the bathroom and closed the door. After Serveriano heard the front door close, he left the bathroom and looked out the window to see a blue and gray Explorer driving away. Serveriano called the police. He told police the Defendant was a black male and he wore shorts and a baseball hat.
Police responded to both calls and broadcasted a look-out for the suspect. Less than ten minutes later, Officer John Grismer identified and pulled over a car matching the description near Serveriano's apartment. Defendant moved to suppress evidence obtained through stopping and searching his vehicle and his person pursuant to what Defendant argues was an unconstitutional search and seizure. When determining whether there was reasonable suspicion to stop Defendant, the trial court made, in part, the following findings of fact relating to the stop:
... Officer Grismer was on patrol approximately a little bit less than one mile north of the apartment where the robbery was alleged to have taken place. He observed a blue Explorer or Expedition with gray trim operating in a southerly direction towards the scene of the crime. He turned around and followed that vehicle ...
Officer Grismer noticed that the vehicle had some stickers on it which indicated the driver might be connected with law enforcement or be law enforcement himself. He announced various commands to try to get the defendant to place his hands out the window, and there was some delay in doing so. The officer had to make several commands, and eventually another officer went, opened the passenger door, and told the defendant to put his hands on his head.
The defendant was escorted around the rear of the vehicle, and one of the officers asked the defendant if there was a gun in the vehicle, and he asked, for officer safety purposes.
The defendant responded, "Yes," and a gun was located in the console-concealed in the console area. The defendant was eventually ... handcuffed and detained there at the scene for approximately 30 minutes until a showup could be conducted, at which the two complainants identified the defendant.
The trial court denied Defendant's motion to suppress.
At the close of the State's case, Defendant made a motion to dismiss all charges. The trial court granted dismissal of the impersonating an officer charge and denied dismissal of all other charges. The jury found Defendant guilty of all remaining charges.
During the sentencing hearing, Defendant moved to arrest judgment on the communicating threats conviction. The trial court granted Defendant's motion. The trial court sentenced Defendant to 51 to 74 months' imprisonment, and entered a consolidated judgment listing convictions for robbery with a dangerous weapon, felonious entering, carrying a concealed gun, communicating threats and second-degree kidnapping on the judgment. Defendant timely gave oral and written notices of appeal.
II. Jurisdiction
Jurisdiction lies in this Court pursuant to N.C. Gen.Stat. § 7A-27(b), which provides for an appeal of right to the Court of Appeals from any final judgment of a superior court.
III. Standard of Review
The standard of review of a trial court's denial of a motion to suppress is whether the trial court's findings of fact are supported by competent evidence and whether the findings of fact support the conclusions of law. State v. Pulliam, 139 N.C.App. 437, 439-440, 533 S.E.2d 280, 282 (2000).
IV. Analysis
A. Motion to Suppress
Reasonable suspicion is the necessary standard for traffic stops. State v. Styles, 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008). "Reasonable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' " Id. at 414, 665 S.E.2d at 439 (quoting Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 675 (2000) ). A stop must be based on "specific and articulable facts," as well as the "rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." State v. Watkins, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994) (citing Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880 (1968) ). Moreover, an officer may detain a person to investigate a crime if the officer has a reasonable, articulable suspicion that the person has committed a crime. State v. Fletcher, 348 N.C. 292, 302, 500 S.E.2d 668, 674 (1998). Trial courts must consider the totality of the circumstances when determining whether an officer had reasonable suspicion to make an investigatory stop. State v. Shearin, 170 N.C.App. 222, 226, 612 S.E.2d 371, 376 (2005) (citing State v. Willis, 125 N.C.App. 537, 541, 481 S.E.2d 407, 410 (1997) ).
In State v. Fletcher, the police received information from two sources that the person they were looking for was a tall black male with dark pants and a white shirt. Id. at 302, 500 S.E.2d at 674. Officers saw a person fitting the description moments later within two blocks of the location of the sources. Id. at 302, 500 S.E.2d at 674. Our Supreme Court held "that the proximity in time and location and the accuracy of the physical description of the race, gender, and clothing of the suspect gave the officers reasonable suspicion to make an investigative stop of the defendant." Id. at 302-303, 500 S.E.2d at 674.
This Court held in an unpublished opinion that reasonable suspicion existed when a car of the same color, make, and model in the witness description was found close to the scene of the crime. State v. Holliday, 228 N.C.App. 360, 748 S.E.2d 775 (2013) (unpublished). In Holliday, the police broadcast that there was a hit-and-run accident involving a red Ford Mustang. The Officer responded to the dispatch and within minutes pulled over Defendant, who was driving a red Mustang. The Officer knew the color, make, and model of the car, a red Ford Mustang, involved in the hit and run and found Defendant's car less than one-tenth of a mile from the location of the hit and run. We held officers had reasonable suspicion to make the stop.
In contrast, in State v. Cooper a police report indicated that a black male committed an armed robbery and there was no description as to age, physical characteristics, or clothing. State v. Cooper, 186 N.C.App. 100, 107, 649 S.E.2d 664, 668 (2007). Our Court held in this case that the officer needed to have more than a hunch or a generalized suspicion. Id. at 104, 649 S .E.2d at 667.
Defendant argues the trial court erred by denying his motion to suppress. First, Defendant contends a description of Defendant's car alone did not provide reasonable suspicion for a stop. In the alternative, Defendant argues the trial court should have granted his motion to suppress because Defendant was arrested when Officer Grismer pointed a gun at him and ordered him to put his hands out the window. Thus, the arrest was without a warrant or probable cause.
Defendant does not challenge the factual findings of the trial court's order denying his motion to suppress. When the trial court's finding of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal. State v. Roberson, 163 N.C.App. 129, 132, 592 S.E.2d 733, 735-36. Thus, we are limited to determining whether those factual findings support the court's conclusion that the stop was based on reasonable suspicion.
Here, the findings of fact show the stop was made in response to two witnesses describing a blue Ford Explorer with gray trim. Both witnesses agreed on the color, make, and model of the car. Under Fletcher, the proximity in time and location in combination with the accurate description gave officers reasonable suspicion to make an investigative stop. Officers stopped Defendant's car less than ten minutes after police broadcasted a look-out for the vehicle. Further, the stop occurred less than one mile from Serveriano's apartment. Thus, the officers had reasonable suspicion based on specific and articulable facts to make a stop.
As for Defendant's second argument, the trial court's findings on Defendant's motion to suppress do not support Defendant's factual contention. The factual findings do not include an officer drawing a weapon. Even so, officers may take reasonable steps necessary to protect their safety. See U.S. v. Hensley, 469 U.S. 221, 235, 83 L.Ed. 2. 604, 606 (1985). Officer Grismer had reason to believe Defendant committed an armed robbery when Officer Grismer made the stop and Defendant did not initially comply with commands to place his hands outside the vehicle. As a result, we hold the findings of fact support the trial court's conclusion to deny Defendant's motion to suppress.
B. Clerical Error
Pursuant to Rule 60(a) of the North Carolina Rules of Civil Procedure, clerical mistakes in judgments, orders or other parts of the record and errors may be corrected with leave of the appellate courts. N.C. Gen.Stat. § 1A-1, Rule 60 (2015). When a clerical error is discovered on appeal, it is appropriate to remand the case to the trial court for correction. State v. Lark, 198 N.C.App. 82, 95, 678 S.E.2d 693, 702 (2009).
Defendant argues the judgment contains a clerical error. The judgment lists communicating threats as one of Defendant's convictions, but the trial court arrested judgment on that charge. The State concedes that the judgment includes the offense of communicating threats when the trial court arrested judgment on that offense. Thus, this matter should be remanded to the trial court for correction of the clerical error in the judgment.
V. Conclusion
For the foregoing reasons, we affirm the trial court's denial of Defendant's motion to suppress and remand for correction of a clerical error in the judgment.
AFFIRMED IN PART AND REMANDED IN PART.
Judges STEPHENS and INMAN concur.
Report per Rule 30(e).